Argued at Pendleton October 31, 1923, affirmed January 14, 1924

# W. F. COATES *v.* ALVIN SLUSHER.

### (222 Pac. 311.)

**Appeal and Error—Finding of Jury Supported by Evidence not Disturbed.**

1. Finding of fact by jury supported by substantial evidence cannot be reviewed on appeal.

**Witnesses—Question Which can be Answered by "Yes" or "No" not Necessarily Leading.**

2. A question which can be answered by "Yes" or "No" is not necessarily leading, and if it does not suggest one more than the other it is not leading, under Section 858, Or. L., even though it calls attention to a subject about which testimony is desired.

**Appeal and Error—Questions, if Leading, Held not Prejudicial.**

3. In action for alienation of affections, questions, if leading and suggestive, *held* not to have injured defendant where the evidence as shown by the record strongly tended to support the complaint.

**Husband and Wife—Testimony as to Declaration Held Inadmissible.**

4. In action for alienation of affections, court erred in permitting plaintiff to testify that when his wife was brought home by defendant in a drunken condition "she said she had been to S.'s [the defendant's] to a party," being nothing more than a narrative of a past transaction.

**Appeal and Error—Error in Introducing Evidence Held Cured by an Instruction not to Consider It.**

5. Error in introducing testimony as to a narrative of a past transaction was cured by instruction that jury were not to consider it, particularly when the transaction was shown by other evidence.

**Husband and Wife—Declaration of Wife Admissible in Action for Alienation of Affections.**

6. In an action for alienation of a wife's affections, testimony that she said to other women at the apartment where she lived that "she didn't mind having Mr. S. [the defendant] come there, he was a millionaire," was competent.

**Husband and Wife—Conversation Held Admissible in Action for Alienation of Affections.**

7. In an action for alienation of a wife's affections, it was competent, after plaintiff testified that he and two policemen found her and defendant in a compromising position, to ask him what was said by either of the parties, and permit him to testify, "They never said a word, except S. [the defendant] denied ever being with her. I told him he was a d—— liar."

Husband and Wife—Statement by Wife not in Presence of Defendant, Sued for Alienation, as to Illicit Relations, Held Inadmissible.

8. In an action for alienation of a wife's affections, a conversation between her and a police officer, not in the presence of defendant, though just after being found in bed with him, in which conversation she admitted illicit relations with him, was inadmissible.

Appeal and Error — Matter Considered in Determining Prejudice in Admitting Evidence.

9. In determining whether ruling of court denying motion to strike out testimony was prejudicial, only the testimony to which objection was made can be considered, though other testimony immediately connected therewith was also incompetent.

Appeal and Error—Refusal to Strike Out Evidence Harmless.

10. In an action for alienation of a wife's affections, refusal to exclude evidence as to a statement made by a police officer in conversation with her in defendant's absence as to the evidence of her illicit relations with defendant being sufficient, and to which she answered "Yes," *held* harmless error, in view of evidence as to defendant being found in bed with her at the time, and defendant's cross-examination of witnesses bringing out evidence not objected to showing that she admitted intercourse with defendant.

Evidence — In Suit for Alienation of Wife's Affections, Plaintiff may Testify as to How He Felt as to His Daughter and the Effect on Her.

11. In an action for alienation of wife's affections, the court properly permitted plaintiff to testify as to how he felt about his daughter, and the effect on her of the conduct of his wife and defendant.

Husband and Wife—Damages Recoverable for Alienation of Affections of Wife Stated.

12. The right of husband to recover for alienation of affections of wife is based upon the loss of consortium; but it is also true that, if this basic right exists then the injured spouse is not limited to the recovery of damages measured by the loss of consortium, but is entitled to damages measured by the permanent loss of the spouse's aid, comfort and companionship, and also injuries to feelings and increased cost of maintaining himself and daughter by reason of the separation.

Husband and Wife—Testimony of Efforts to Prosecute Defendant Admissible in Action for Alienation of Affections.

13. In an action for alienation of wife's affections, where defendant was vigorously contending that he was the victim of a badger game, it was competent for the plaintiff to testify that he made an effort to bring about the prosecution of the defendant for adultery, and learned it could not be done.

Husband and Wife—Evidence as to Whether Defendant's Wife Home When Plaintiff's Wife Called Admissible.

14. In an action for alienation of wife's affections, where defendant admitted that plaintiff's wife on one occasion accompanied

him to his home for a certain purpose, it was competent to ask him whether his wife was home at the time.

**Appeal and Error—Exclusion of Evidence of Fact Shown by Other Evidence Harmless.**

15. It is harmless to exclude evidence tending to show a fact shown by other uncontradicted evidence.

**Trial—Instructions must be Construed as a Whole.**

16. In determining whether instructions assumed facts the charge must be viewed as a whole.

**Husband and Wife—Instruction as to Damages in Action for Alienation of Affections Held Proper.**

17. In an action for alienation of wife's affections, the court properly instructed, "If you find plaintiff, under the instructions given you, is entitled to recover against defendant, then you should find such damages in his favor as will compensate him for the loss of his wife's society, assistance, affection, comfort, and companionship, for any physical pain or mental anguish, suffering, humiliation or disgrace that he may have endured."

**Husband and Wife—Punitive Damages Recoverable for Alienation of Affections.**

18. A husband may recover punitive damages for alienation of his wife's affections.

**Appeal and Error—Jurors Presumed to Understand English.**

19. On appeal it will be presumed that jurors understood the English language, and that they were not misled in a suit for alienation of wife's affections as to meaning of a "substantial sum" in an instruction requiring as a condition of allowing punitive damages that the jury find "a substantial sum, * * something more than nominal damages, of a compensatory nature."

**Trial—Requested Instructions Covered by Given Instructions Properly Refused.**

20. There was no error in refusing requested instructions which, in so far as correct, were in substance and effect completely and adequately given by the court in its charge.

**Husband and Wife—In Suit for Alienation of Affections Defendant's Motion for Nonsuit and Directed Verdict Held Properly Denied.**

21. In an action for alienation of wife's affections, *held*, under the evidence, that the court properly denied defendant's motion for nonsuit and for a directed verdict.

**Husband and Wife—Damages for Alienation of Affections not Excessive.**

22. A verdict for $3,000 compensatory damages and $7,000 punitive damages *held* not excessive for alienation of wife's affections.

---

22. Excessiveness of verdict in action for alienation of affections, see note in **Ann. Cas.** 1912A, 950.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

W. F. Coates brought this action against Alvin Slusher alleging that the latter had between March 8, 1922, and August 6, 1922, alienated the affections of the former's wife, Grace L. Coates. The verdict of the jury awarded the plaintiff $3,000 as compensatory damages and $7,000, as punitive damages. The defendant appealed from the consequent judgment.                                        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Peterson, Bishop & Clark* and *Messrs. Raley, Raley & Steiwer,* with oral arguments by *Mr. Will M. Peterson* and *Mr. J. H. Raley.*

For respondent there was a brief over the names of *Messrs. Fee & Fee* and *Messrs. Keator & Randall,* with oral arguments by *Mr. James A. Fee, Jr.,* and *Mr. Charles Z. Randall.*

HARRIS, J.—The plaintiff married Grace L. Spencer on July 17, 1910, in Missouri. They had been acquainted since childhood. Three or four years after their marriage the plaintiff and his wife moved to Oklahoma and subsequently they came with their daughter to Oregon.

The Slusher estate owns about 30,000 acres of land in Umatilla County. A considerable portion of this land is wheat land and from fifteen to sixteen thousand acres are grazing lands. We understand from the record that several ranches are included in the 30,000 acres; and, although the record is not entirely clear, we also understand that these several

ranches are "all adjoining." Seven of the ranches
were leased to different tenants during the year 1922.
Dale Slusher and the defendant Alvin Slusher are
brothers. One of the ranches is known as the Nolin
ranch, because it is located near Nolin. This ranch
is distant about seventeen miles from Pendleton.
The Nolin ranch was in charge of Dale Slusher.
Another ranch is known as the upper ranch, and
it is about twelve miles from the Nolin ranch. The
Upper Ranch embraces about 3,000 acres of land, of
which 1,000 or 1,200 acres were sown to wheat each
year. The Upper Ranch was leased to Alvin Slusher
and was operated by him in 1922. Although Dale
Slusher was in charge of the Nolin Ranch, the de-
fendant Alvin Slusher appeared to have exercised
some authority in the management of that ranch,
especially in the absence of Dale Slusher. The
record does not inform us of the extent of the respec-
tive interests owned by the defendant and his brother
in the Slusher estate, but we do understand that they
are heirs and possibly the principal owners of the
estate. Early in March, 1922, Dale Slusher met the
plaintiff and his wife in Pendleton and employed
them to work on the Nolin Ranch; the plaintiff was
to do the chores and his wife was to do the cooking.
The plaintiff and his wife worked upon the Nolin
Ranch from March 8, 1922, until they were dis-
charged by Dale Slusher on the following eighteenth
day of July. The defendant stopped at the Nolin
Ranch several times each week on his trips from
Pendleton to the Upper Ranch. One day about the
middle of April the defendant stopped at the Nolin
Ranch shortly before noon. The defendant was on
his way to the Upper Ranch, and after he stopped at
the Nolin Ranch arrangements were made for Mrs.

Coates to accompany him on the trip to the Upper
Ranch. The defendant says that Mrs. Coates asked
if she could go along, while she says that he in-
vited her to go and asked her not to take her daugh-
ter, who was then about nine years of age. She
testified that about three weeks after she went to the
Nolin Ranch the defendant began to hug her. The
defendant and Mrs. Coates soon after the noon meal
left in his car for the Upper Ranch and did not re-
turn until about 6 o'clock that afternoon. She claims
that on the trip they stopped at one of the sheep-
herder cabins owned by the estate and that there
the defendant took advantage of her.

The plaintiff says that at some time, either the
latter part of May or the first part of June, he saw
his wife put a paper in the stove, and that when
she left the room he took the paper out of the stove.
The writing was received in evidence and reads thus:

"Who do you love? I want you tomorrow sure,
dearie, all to ourselves, don't say no. You think
and scheme."

The plaintiff says that he knows the defendant's
handwriting and that in his opinion the defendant
wrote the note. The signature subscribed by the de-
fendant to his answer herein was received in evi-
dence for comparison by the jury. The defendant
denied that he wrote the note, but it is a significant
fact that he made no effort, except his bare denial,
to show that the note was not his handwriting. The
record contains much additional evidence which, if
believed, strongly tends to support the allegations
of the complaint.

When the plaintiff and his wife were discharged
from the Nolin Ranch on July 18th they went
to Pendleton and occupied an apartment in the Eu-

reka Apartment House for a period of about two weeks, and then they moved with their daughter to the Parkview Apartments where they were living on August 3d.

The record contains evidence which, if believed, warranted the jury in finding that one morning between July 20th and July 25th, Mrs. Coates accompanied the defendant to his home in Pendleton and remained there with him from about 9:30 until about 11:30 o'clock. The record also contains evidence which, if believed, warranted the jury in finding that while the plaintiff and his family were still occupying the Eureka Apartments Mrs. Coates met the defendant one night about 9 o'clock and got in his car and accompanied him to his home where she remained until about 4:30 o'clock the next morning and then was brought by the defendant in a drunken condition in his automobile to the Eureka Apartments.

On August 3d the plaintiff told his wife he was going to Spokane and possibly to Wallace, Idaho, in order to get work; and so he tied his bedding to his motorcycle and left about noon. He had previously consulted with a lawyer about procuring a divorce. The plaintiff had been watching his wife and had observed acts of which he could rightfully complain if they occurred as he says they did. Instead of going to Spokane or to Wallace, the plaintiff went only as far as Freewater, and then he returned to Pendleton, arriving there about 8 o'clock in the evening of the day on which he left Pendleton. He took a position in a park where he could see a window in his apartment; and after waiting for half an hour or an hour a light appeared in the window and he saw, according to his testimony, his wife and the de-

fendant embracing each other and begin to undress and pull down the curtain. The plaintiff then went to the apartment house and called the landlady and telephoned to the police station. Joe Blakely, the city marshal, and John Roheur, a policeman, responded to the call. The plaintiff unlocked one of the two outside doors and, together with the two policemen, entered the apartment which consisted of two rooms, one of which was the kitchen and the other served both as a living-room and as a bedroom. When the plaintiff and the two policemen entered they found Mrs. Coates and the defendant in bed together, she with a nightgown on and he in his underclothes. There is evidence to the effect that Mrs. Coates yielded to the defendant and that she yielded on different occasions between the middle of April and the 3d of August. Mrs. Coates testified that the defendant told her that he would take care of her and would give her anything if she would go with him and that he would provide a home for her and that she would not have to work any more and that he would procure a divorce from his wife and marry her. Mrs. Coates also testified that she became dissatisfied with the plaintiff and that her feelings toward him changed.

Prior to the trial of the instant case the plaintiff obtained a divorce from his wife and secured the custody of the daughter.

1. The printed brief filed by the defendant opens by declaring: "This case is the result of an attempted badger game." The defendant devotes considerable space in his printed brief to an elaboration of this contention. In the oral argument made at the hearing the defendant's views were urged with vigor; but it is a complete answer to this contention

of the defendant to say that his contention involves
a pure issue of fact which was submitted to the jury
with proper instructions; and that the jury resolved
the issue of fact against the defendant. There was
not only some substantial evidence but there was
much substantial evidence to support the finding of
the jury; and therefore this court cannot on appeal
review the jury's decision of that issue of fact.

It is argued that the judgment ought to be reversed
because of the asking of four different questions which
the defendant claims were leading and suggestive.

W. F. Coates, who was the first witness, was
asked:

"State if you had ever known anything wrong
with your wife in any way, during the years you
lived with her up until the time you went to the
Slusher ranch." He answered: "None whatever."

Grace L. Coates, who was called in rebuttal as a
witness for the plaintiff, was asked:

"State, Mrs. Coates, whether or not you had ever
been intimate with anybody else than your husband
prior to the time you and Al. Slusher met?" She
answered: "No, sir."

Mrs. Coates was also asked the question:

"Now state whether or not there was any im-
proper conduct in any way between you and Heit-
man upon that occasion or any other?" She an-
swered: "There was not."

Harley Heitman was regularly employed at the
Upper Ranch. However, he worked for a couple of
weeks or more at the Nolin Ranch. One evening in
the latter part of June or the first part of July dur-
ing the period while Heitman was working at the
Nolin Ranch he took his laundry to the Adams place
and Mrs. Coates accompanied him. Each rode a

horse and they were gone between an hour and an hour and a half. In the course of the trial the defendant sought to make much out of this incident. The last-quoted question which was asked Mrs. Coates related to the Heitman incident.

Mrs. Coates was also asked the following question: "Mrs. Coates, did you have any answer you knew you could make in the divorce case?" She answered: "I didn't have the money to go into court at all." The question and answer next following were as follows:

"State whether or not the things Mr. Coates charged you with in the complaint were true or not? They were."

Our Code, Section 858, defines a leading question thus:

"A question which suggests to the witness the answer which the examining party desires is denominated a leading or suggestive question. On a direct examination, leading questions are not allowed, unless merely formal or preliminary, except in the sound discretion of the court, under special circumstances making it appear that the interests of justice require it."

2. A question which can be answered by "Yes" or "No" is not necessarily leading; if it does not suggest one answer more than the other it is not leading, because it does not suggest the answer which the examining party desires. A question which does not itself suggest the answer expected is not necessarily leading even though it calls attention to a subject about which testimony is desired. Moreover, as stated in 28 R. C. L. 591:

"There must, however, have been a manifest abuse of discretion by the trial court in permitting a party

to ask leading questions of a witness, before a case will be reversed on that ground. It must have influenced the answer, and injury must have resulted.''

3. Three of the four questions do not appear to have been leading. However, even if it be assumed that each of the four questions was leading and suggestive as claimed by the defendant, nevertheless it is entirely clear from a reading of the record that the defendant was not injured in the slightest degree.

4. The next assignment of error relates to declarations made by the deserting spouse. The plaintiff had testified in his direct examination and on cross-examination concerning the occasion when his wife, after remaining in the home of the defendant all night, was brought to the Eureka Apartments in a drunken condition, and he had told the jury that shortly after midnight he had gone to the Slusher home and, looking through a window, saw his wife and Slusher, and that subsequently he hunted up a policeman, who told him in substance that nothing could be done about the matter. On redirect examination the plaintiff was asked:

''What did your wife say when she came home as to where she had been when she was drunk upon that occasion? * * What explanation did she give?''

Over the objection of the defendant the plaintiff answered: ''She said she had been up to Slusher's to a party.'' The answer was nothing more than a narrative of a past transaction and was not competent. But the court subsequently cured the error by instructing the jury as follows:

''At this time I want to withdraw from the jury the testimony that was received this morning to the effect that Mrs. Coates stated to the plaintiff that she had been at the Slusher house. If there is any controversy about this piece of testimony I will have

it referred to and given to the jury later. The jury will give no consideration to that answer. That does not take from the jury the testimony in the case of the plaintiff concerning what he saw in his direct testimony concerning the visit of his wife to the Slusher home; it merely goes to the statement which the plaintiff says that his wife made to him that she had been at the Slusher house; that is withdrawn from the jury.''

5. The defendant insists that the answer of the witness necessarily resulted in injury and that it was impossible after the injury was done to effect a cure by an instruction withdrawing the damaging answer from the jury. We are quite sure that the defendant suffered no injury whatever, particularly in view of the fact that the plaintiff had previously testified about seeing Mrs. Coates in the Slusher home that night and in view of the further fact that Mrs. Coates testified that she was at the defendant's home that night.

6. Mrs. Retta Cummings, who lived at the Eureka Apartments when the plaintiff and his family resided there, testified that one evening while she and two other ladies and Mrs. Coates were on the lawn, Mrs. Coates said: ''She didn't mind having Mr. Slusher come there, he was a millionaire.'' This testimony was obviously competent: *Pugsley* v. *Smyth,* 98 Or. 448 (194 Pac. 686).

7. The plaintiff, after testifying that he and the two policemen found the defendant and Mrs. Coates in bed, was asked by his attorney what was said by either of the parties and he answered: ''They never said a word except Slusher denied ever being with her. I told him he was a damned liar.'' This testimony was not incompetent; and consequently the defendant cannot complain about it.

8–10. However, the plaintiff was then asked a question to which he gave the following answer:

"One of the officers, when we got ready to leave, I told him to throw them in jail, when we got ready to leave, one of the officers started out and went back and asked her if she had ever had intercourse with him, and she never answered it, and he told her the evidence was sufficient anyhow, and she answered, yes."

The defendant moved "to strike out that portion of the evidence where the officer said, the evidence was sufficient, as incompetent and hearsay and does not tend to prove any issue in the case."

The defendant had left the room and was not present when the officer and Mrs. Coates made the last-quoted statements. Although none of the conversation between Mrs. Coates and the officer was competent (*Pugsley* v. *Smyth*, 98 Or. 448, 464, 194 Pac. 686), it must be remembered, in determining whether or not the challenged portion of the answer of the witness was prejudicial error, that the objection of the defendant goes only to the statement of the officer that "the evidence was sufficient anyhow." We must also remember the testimony of the plaintiff concerning what he saw when in the park and all the circumstances connected with finding the defendant and Mrs. Coates undressed and in bed together. Roheur and Blakeley were called as witnesses for the plaintiff and each testified in detail about what occurred when they entered the room and found the defendant and Mrs. Coates. Although neither of these two witnesses testified on direct examination concerning any question that either may have asked Mrs. Coates concerning any intimacy between the defendant and her, the defendant nevertheless on cross-examination

elicited from Roheur testimony to the effect that he heard Blakeley ask Mrs. Coates "If she had had intercourse with that man and she said yes"; and on cross-examination Blakeley stated that he "said" to Mrs. Coates, "did you have intercourse with this man and she said yes." Although none of the conversation between Blakeley and Mrs. Coates would have been competent in the face of an objection, the defendant, apparently in order to develop his theory of a badger game, desired that the record contain not only the testimony of the defendant to the effect that Mrs. Coates smiled when he left the room but also all the conversation between Blakeley and Mrs. Coates except that part of Blakeley's statement which the defendant sought to have stricken out. The defendant cannot, nor does he complain of the question asked by Blakeley or of the answer given by Mrs. Coates. See *State* v. *Farnam,* 82 Or. 211, 242 (161 Pac. 417, Ann. Cas. 1918A, 318). In view of the condition of the record we hold that the failure of the court to strike out the few words moved against by the defendant did not prejudice him.

11. The next assignment of error involves a question asked the plaintiff on direct examination when a witness in his own behalf. The question was: "Just tell us how you feel about your little girl and the effects of this upon her." When the defendant objected the court ruled thus:

"It is not a question of how he feels, but it is a question of what the effect has been. He may answer in that respect."

The witness answered as follows:

"The effect has been very bad on me, and the little girl both, the little girl comes down to see me, and I go up to the academy to get her and she cries to see

109 Or.—40

her mother and sometimes I let her go and sometimes I don't let her go to see her mother.''

The objection of the defendant is based on the motion that the purpose of the question was to ascertain ''the effect of this'' upon the little girl. As we interpret the question the object of the examiner was to have the witness tell just how he felt about the effect of this upon her. The court in ruling upon the objection evidently gave the same interpretation to the question and limited the question to what the effect has been on him; and the question when so limited was competent.

12. The plaintiff was asked on direct examination:

''What is the cost of maintaining yourself and family as it exists now as compared with what it was before?''

The court said: ''It is touching the element of damage,'' and permitted the witness to answer thus:

''Well, it is more than before, because I have got to board out now, and I have to pay the little girl's board in the academy, and I can't take her into every place by myself where I can save any money; it takes something like $20 a week to keep me and her now, or a little better, possibly twenty-five to keep us and board us.''

The defendant relying on the holding in *Pugsley* v. *Smyth,* 98 Or. 448, 459 (194 Pac. 686), that ''the right to recover is based upon the loss of consortium,'' argues that the evidence objected to was not competent. It is true that the right to recover is based upon the loss of consortium, but it is also true that if this basic right exists then the injured spouse is not limited to the recovery of damages measured by the loss of consortium but is entitled to damages measured by the permanent loss of the spouse's aid,

comfort and companionsip; and the injured spouse
may also recover for the wrong and injury done to
his or her feelings.  Such compensatory damages are
recoverable as are the direct, probable or proximate
consequences of the wrongful act of the defendant:
30 C. J. 1148, 1149; *Rudd* v. *Dewey,* 121 Iowa, 454,
461 (96 N. W. 973).

13. The defendant complains because the plaintiff
was permitted over objection to testify on redirect
examination that after the occurrence in the Park-
view Apartments he applied to the ''prosecuting at-
torney'' for a warrant of arrest against Slusher and
learned that he could not prosecute the defendant
for adultery.  The defendant insists that this testi-
mony was highly prejudicial because it was no part
of any issue in the cause and was a collateral matter.
It must be remembered that the defendant was vig-
orously contending and that he still insists that he
was the victim of a badger game.  In view of this
contention it was competent for the plaintiff to testify
that he made an effort to bring about the prosecution
of the defendant.

14. The defendant admitted that Mrs. Coates on
one occasion accompanied him to his home.  The ver-
sion of this occasion given by the defendant was en-
tirely different from the version given by the plain-
tiff.  The defendant was asked on cross-examination,
''Was your wife there at that time?''  The court,
over objection, required the witness to answer and
he said, ''No, she was not.''  The defendant now
argues that the question was wholly immaterial and
irrelevant.  In our view the question was competent.
It must be borne in mind that the plaintiff was con-
tending that the conduct of the defendant and Mrs.
Coates was improper while the defendant was con-

tending that the sole purpose of the occasion men-
tioned was to obtain a package belonging to Mrs.
Coates and which he had brought from the Nolin
Ranch. If the defendant's wife had been home it is
not likely that he would have entered any objection
to the question; but, upon the contrary, it is likely
that he would have been anxious to have told the
jury that his wife was home. It is manifest that
if his wife was not at home it was a circumstance
which the plaintiff had a right to bring to the sup-
port of his contention.

15. The next assignment of error relates to the
incident when Heitman, accompanied by Mrs. Coates,
took his laundry to Mrs. Adams. Mrs. Coates had
told in her direct examination about why she hap-
pened to go with Heitman and about what occurred
on the trip; and she also stated that she had a talk
with her husband when she and Heitman came back
together. Mrs. Coates was then asked: "What did
your husband say at that time?" The defendant
complains because the court sustained an objection
to the question. It is not entirely clear whether the
object of the cross-examiner was to ascertain what
the plaintiff said about his wife when outside of the
house and "in the yard," or when inside the house
and beyond the hearing of others. The defendant
argues that it is possible that the plaintiff abused
his wife and that if the witness had been permitted
to answer she might have revealed the fact that he
had abused her and that he was jealous and suspi-
cious of her while out riding with Heitman and that
because of all this her possible answer "might have
had a great deal to do with convincing the jury that
she had no affections for her husband." The record
contains much evidence to the effect that the plaintiff

cursed both Heitman and Mrs. Coates and threatened
to kill both of them if he caught them together again.
It is true that the plaintiff testified that he did not
remember what he said upon the return of Heitman
and Mrs. Coates; but it is also true that he did not
deny that he cursed Heitman and his wife or that
he threatened to kill them.  It is true that Heitman,
who was a witness for the defendant, was apparently
slow to testify, but it is likewise true that he did
testify that the plaintiff threatened to kill him and
Mrs. Coates.  The uncontradicted evidence is that
the plaintiff was angry when Heitman and Mrs.
Coates returned; and, unless it can be said that the
slowness of Heitman to testify and the failure of the
plaintiff to remember what he said constitute contra-
dictory evidence, it must also be said that the un-
contradicted evidence is that the plaintiff cursed
Heitman and Mrs. Coates and ordered her into the
house.  In this situation the ruling of the court
worked no injury to the defendant, even though it be
assumed that the question was properly asked.

Dale Slusher a witness for the defendant, testified
that he discharged the plaintiff and his wife.  One of
the last questions asked on the direct examination of
this witness was the following: ''Why did you dis-
charge him and her?''  The answer was: ''For some
time their work had not been to my satisfaction.''
On motion of the plaintiff the court struck out the
answer, and this ruling is assigned as error.  The
witness had previously testified about notifying the
plaintiff that he was discharged and that the plain-
tiff had insisted he be given a reason for his dis-
charge; that he told the plaintiff that he did not
think it was necessary to give any reason; that the
plaintiff talked at length about the defendant as the

one who was responsible for getting him discharged; and that the plaintiff "was very indignant over it." Among other answers given by the witness previous to the answer struck out by the court was the following, which was received without objection:

"He said * * he wanted to know what he was fired for, and I told him I didn't think it was necessary, I was not satisfied with his work, and that is the only explanation I would give him."

Thus it is seen that the evidence to which the defendant says he was entitled had already been received and was submitted to the jury for consideration; and, consequently, the ruling of the court was not prejudicial error even though it be assumed that the testimony was relevant and competent.

16. It is next claimed that the court in giving instruction No. 12 assumed that the defendant had been guilty of "wrongful acts and conduct," and thus invaded the province of the jury. But this instruction must be viewed in the light of instruction No. 23 and the remaining portions of the charge, and when so viewed it becomes manifest that the court made it entirely clear that it was for the jury alone to ascertain the facts.

17. Error is assigned because of the giving of instruction No. 20 which reads as follows:

"If you find plaintiff, under the instructions given you, is entitled to recover against defendant, then you should find such damages in his favor as will compensate him for the loss of his wife's society, assistance, affection, comfort and companionship for any physical pain or mental anguish, suffering, humiliation or disgrace that he may have endured."

The instruction given is amply supported by adjudicated cases and text-writers: 30 C. J. 1148, 1149; *Nevins* v. *Nevins,* 68 Kan. 410 (75 Pac. 492); *Hart-*

*pence* v. *Rogers,* 143 Mo. 623 (45 S. W. 650). In 13 R. C. L. 1481, the rule is stated thus:

"As a general rule, the plaintiff may recover for all direct and proximate losses occasioned by the tort for the physical pain, if any, inflicted; for his or her mental agony, lacerated feelings, wounded sensibilities, and the like."

18. The defendant questions the instruction which permitted the jury to assess punitive damages. Exemplary damages are recoverable in this jurisdiction: *Bingham* v. *Lipman,* 40 Or. 363 (67 Pac. 98). And we hold that punitive damages may be recovered in actions like the instant case: 13 R. C. L. 1482.

19. The defendant criticises instruction No. 22, which reads thus:

"Unless you first find plaintiff is entitled to recover compensatory damages then you are instructed you cannot find against the defendant for punitive. Punitive damages means damages by way of punishment, sometimes called smart money but there must first be a finding by the jury in a substantial sum, not necessarily any particular amount, but something more than nominal damages of a compensatory nature."

The objection made by the defendant is:

"The jury may have been misled by this instruction in regard to the meaning of 'a substantial sum * * something more than nominal damages.'"

Presumably all the jurors understood the plain meaning of the English language, and, if they did, they could not have been misled.

20. The defendant complains because several instructions requested by him were not given in the language of the requested instructions. We do not deem it necessary in this opinion to quote the requested instructions; but we think it is sufficient to

say that we have examined the requested instructions and the charge as given by the court, and we find that the requested instructions, to the extent that they were correct, were in substance and effect completely and adequately given by the court in its charge to the jury.

21. The court properly denied the defendant's motion for a nonsuit and his motion for a directed verdict.

22. In the circumstances revealed by the record this court cannot say that the verdict ought to be set aside on the ground that the damages are excessive.

The defendant was represented by attorneys of large experience and of acknowledged skill and ability; and they have on this appeal seized upon and in a carefully prepared brief made the most of every point that could in the slightest degree be of aid to the defendant. We have examined every point presented by the defendant; and it is our conclusion that the trial was free from prejudicial error. The result, therefore, is that the judgment must be affirmed.                                        AFFIRMED.

BURNETT, J., not sitting.