Argued at Pendleton May 2; reversed June 14, 1932

## STATE *v.* PIERCE
(12 P. (2d) 320)

*H. V. Schmalz,* of Burns (Pat H. Donegan, of Burns, on the brief), for appellant.

*Robert M. Duncan,* of Burns (George S. Sizemore, of Burns, on the brief), for the State.

CAMPBELL, J.   The defendant was indicted by the grand jury of Harney county for the crime of libel. The charging part of the indictment reads as follows:

"The said Syd D. Pierce, on the 11th day of September, A. D. 1931, in the County of Harney and State of Oregon, then and there being, did then and there unlawfully and willfully, by means other than words orally spoken, publish and cause to be published in a certain newspaper called the Burns Press, printed in the English language in the City of Burns, in the County and State aforesaid, which said newspaper was generally circulated through said County and State, false and scandalous matter of and concerning one J. J. Walsh, with intent then and there on the part of him, the said Syd D. Pierce, to injure and defame said J. J. Walsh, which said false and scandalous matter so published is in words and figures as follows, to wit:

'TO THE HONORABLE TAX COMMISSIONERS:

For my enlightenment as well as the enlightenment of the public, I would like an answer to these questions:

In recommending the consolidation of road and water masters office, why was it in favor of the water master? A man (?) sent in here by the State because he had a "ringside seat" with the higher-up in office —one who cares absolutely nothing about the interests of anyone, unless there is a rake-off for him.

It comes to my hearing from dozens of scores that he has not acted fairly in the distribution of water, and in my case I know that it is a fact.

This man (?) does not pay one cent of tax in Harney County—even rents the furniture he uses, so he will not be encumbered when the county gets their

eyes opened and he is asked to move, and his graft game is over.

If the tax commission wishes to cut down on expenses, why not discontinue the water master's office to where it always was before Mr. Walsh's appointment, namely eight or nine months in the year? Every old-timer in the county knows that there is no use for a water master on a 12 month pay than a dog has for three tails. Yet you are perfectly willing to pay Mr. Walsh a handsome salary for doing absolutely nothing but possibly take a joy-ride in his car and then charge an extra rake-off for mileage.

This man (?) has been working on the consolidation of these offices ever since he came as his theory must be that one family can live fatter on money from two or more county offices than two or more families can by distributing the salaries. But right here I want to compliment Mr. Walsh—he is no fool. Whoever saw a successful crook that was?

He knew the court's weak point and played up to it—to get rid of the roadmaster.

Another question: At Warm springs at Silver creek, the the people of that district have been trying to get a road for forty years. Last spring, 1930, Simon Lewis, Ernest Smith and Walsh viewed out a road in the best location obtainable, but Our Bill, the road booster, did not want it in that location, so had it changed by Ernest Smith, Lester Williams and Walsh to one that suited him better, but was not as good a location for the settler.

Another nigger in the woodpile: T'was there that Sam Mothershead, a tool of Hanley, made the motion to consolidate the road and water master's offices. Why? Because Walsh fixed the road for Hanley. And as compensation the commissioner's would boost him for both road and water master. Now in conclusion, let's give the devil his due—that is the road master.

When he took the office over two years ago the road fund was over $4,200.00 in the "hole." He with the help of the efficient county court lifted $2,400.00 of that indebtedness besides building 24 miles of new market roads that are a credit to the state; made a fine

equipment shed; bought caterpillar and other road equipment which are all in good condition and paid for. This office also supplied dozens of men with families employment that the county would have had to maintain, besides Mr. Luckey has been a resident of this county for over 35 years, his wife a longer period. They own property and have paid many dollars into the tax fund. Yet the Honorable Tax Commissioners don't believe that any of that money should revert back to them. The said tax commission can't use him as they please, but rather see it go to an outsider that pays no tax. A Friend of Mr. and Mrs. Luckey.'
*** ''.

The defendant entered a plea of not guilty.

The cause came on for trial before a jury. The state introduced evidence tending to show that defendant was the publisher of the Burns Press, a weekly newspaper of general circulation, printed and published in Burns, Harney county, Oregon; that the alleged libelous article, set out in the indictment, appeared in the issue of said paper of September 11, 1931; that said issue was circulated throughout Harney county. A copy of said issue was then introduced in evidence. The state then rested its case.

Thereupon defendant moved for a directed verdict of not guilty for the reason that there was no evidence introduced showing that the alleged libelous article was false. The motion was overruled. The defendant, without introducing any evidence, rested his case. The cause was submitted to the jury which returned a verdict of guilty upon which judgment of conviction was entered.

Defendant appeals.

All the assignments of error complained of by defendant are included in the first:

That the court erred in refusing to direct a verdict of not guilty.

■ The statute under which the indictment is returned as far as material to this cause, reads as follows:

"If any person shall willfully  *  *  *  publish or cause to be published of or concerning another any false and scandalous matter, with intent to injure or defame such other person  *  *  *  upon conviction thereof, he shall be punished  *  *  *." Oregon Code 1930, 14-238 as amended by Laws of 1931, Chap. 366.

In order that the publication be criminal, it must be both false and scandalous. Herein it differs from libel as defined by common law:

"A second way of affecting a man's reputation is by printed or written libels, pictures, signs and the like, which set him in an odious or ridiculous light, and thereby diminish his reputation. With regard to libels in general, there are, as in many other cases, two remedies; one by indictment and another by action. The former for the public offense; for every libel has a tendency to a breach of the peace, by provoking the person libeled, to break it; which offense is the same (in point of law) whether the matter contained be true or false"; Blackstone's Comm. Book III, Chap. 8, § 161 (2 Jones' Blackstone 1666).

Nearly all the other states have adopted in effect the common law definition. See 17 R. C. L. 262.

It is not every untruthful statement about one that is scandalous; a publication may attribute to one many virtues that he does not possess, but, unless too greatly exaggerated, would not be scandalous. (See any Candidates Campaign Pamphlet to the voters.)

■■ It requires no evidence to show that the words used in the alleged libelous article are scandalous and were used with intent to injure and defame the person of whom they were published. If no explanation were offered by the defendant, the jury could not legally draw any other conclusion. On the other hand, the jury would not be justified in presuming that the statement

contained in the alleged libelous article was false without any evidence to that effect and thus overcome the stronger presumption that:

"A defendant in a criminal action, is presumed to be innocent until the contrary is proven; and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to be acquitted." Oregon Code 1930, 13-921.

"In criminal cases guilt shall be established beyond a reasonable doubt." Id. 9-2001.

■■ Falsity being made an element of the crime by statute, it was incumbent upon the state to prove it. The form of the indictment for libel set out in the appendix of volume 1, Oregon Code 1930, Form No. 20, is sufficient to inform the defendant of the charge against him; it, however, does not relieve the state of the burden of proving every element of the crime. The form of indictment in the instant case follows the language of the statute and it is necessary to prove the allegations thereof.

"It will be remembered that the indictment, after reciting the defamatory matters * * * alleged that they were false and scandalous. Consequently it became the duty of the state to establish their falsity beyond a reasonable doubt: McArthur v. State, 59 Ark. 431 (27 S. W. 628); 25 Cyc. 585." State v. Hosmer, 72 Or. 57 (142 P. 581).

No proof having been introduced as to the falsity of the alleged libelous article, defendant was entitled to an instructed verdict of not guilty.

The judgment will be reversed and the cause remanded with instructions to set aside the judgment of conviction and enter one of dismissal.

It is so ordered.

BEAN, J., not sitting.