Argued March 3, affirmed July 27, 1954

# CRIBBS *v.* MONTGOMERY WARD & CO., INC. ET AL.
## 272 P. 2d 978

*Nels Peterson,* of Portland, argued the cause for appellant. With him on the brief were Frank H. Pozzi and Sidney I. Lezak, of Portland.

*Bruce Spaulding* argued the cause for respondents. On the brief were Wilbur, Mautz, Souther & Spaulding and Kenneth E. Roberts, of Portland.

Before WARNER, Acting Chief Justice, and LUSK, BRAND and PERRY, Justices.

**LUSK, J.**

This is an action for slander. The case was tried to a jury, which returned a verdict for the defendants. Plaintiff has appealed from the consequent judgment.

The assignments of error upon which plaintiff mainly relies are all based upon rulings of the court sustaining objections to the introduction of certain testimony in rebuttal. In order to understand the issue thus raised it will be necessary to refer briefly to the pleadings and the evidence.

The complaint alleged that defendants

"spoke and published of and concerning plaintiff the false, scandalous and malicious words, following, to-wit: 'Afton Cribbs had been discharged from employment at Montgomery Ward & Co. Inc. for misconduct in her work', and that 'Afton Cribbs was discharged as an employee of Montgomery Ward & Co. Inc. for light fingeredness', meaning thereby that the said plaintiff had stolen property of and from said Montgomery Ward & Co. Inc., a corporation, at its plant in Portland, Multnomah County, Oregon."

General damages in the sum of $25,000 and punitive damages in a like sum were sought. In their amended answer the defendants, besides denying the utterance of the defamatory words, affirmatively pleaded what is claimed to be and was apparently accepted by the plaintiff and the court as a plea of qualified privilege. The affirmative defense reads:

"* * * defendants allege that some time prior to the time of said conversation plaintiff was in the employment of defendant Montgomery Ward and at the time mentioned in plaintiff's amended complaint, plaintiff was an employee of said Hermine Charnquist and Carl Charnquist at their place of business mentioned in said amended complaint,

and any and all statements made by defendant Hutchinson at said time and place were made in good faith by him and the same were believed by him to be true, and were in fact true, and were without malice and consisted only of a communication to plaintiff's then employers of facts within the knowledge of defendants concerning plaintiff's said previous employment.''

It should be noted here that the sole witness for the defendants was the defendant Hutchinson, and that he denied that he spoke the defamatory words and did not testify to their truth or that he believed them to be true.

At the time of the alleged defamatory publication an action for false imprisonment was pending between Afton Cribbs as plaintiff and the defendants in this case as defendants. Plaintiff had formerly been in the employ of Montgomery Ward, which discharged her in May, 1949. At that time Hutchinson was chief investigator at Montgomery Ward. Subsequently plaintiff secured employment as a waitress in a restaurant known as Hermie's Drive-In, operated by Hermine Charnquist and her husband. The sole witness to the publication of the defamatory words was Mrs. Charnquist, who testified in substance as follows: In January, 1951, the defendant Hutchinson, with whom she was acquainted as a business patron, came to the restaurant and sought a private interview with Mr. and Mrs. Charnquist, which was granted. Hutchinson asked the Charnquists if they knew that a girl working for them had been fired from Montgomery Ward. Mrs. Charnquist said they did not, and asked who the girl was, and Hutchinson said that it was Mrs. Cribbs, the plaintiff. Mrs. Charnquist asked Hutchinson why she was discharged and he answered, ''She was let go for

misconduct in duty and also for light fingeredness.''
Hutchinson also said: ''Did you know that we have a
suit against her?''

Apart from his denial that he told the Charnquists
the reason for plaintiff's discharge, Hutchinson's testi-
mony was much like that of Mrs. Charnquist's. He
testified that he went to the Charnquists' restaurant
at the request of the law firm which was representing
Montgomery Ward and himself in Mrs. Cribbs' action
against them, to find out if Mrs. Cribbs had been able
to obtain employment; that he asked the Charnquists
if he could talk to them privately, and, when they were
in a private room together, he told them that he wished
to inquire about one of their employees, Mrs. Cribbs,
and informed them of the pending law suit; he asked
how Mrs. Cribbs was getting along and whether her
work was satisfactory, and they said yes; they asked
him what his interest was and he explained that she
had been an employee at Montgomery Ward and had
been discharged. Mrs. Charnquist asked him why she
had been discharged, and he answered that he could
not tell her just exactly why. On cross-examination
Hutchinson admitted that he knew that plaintiff was
employed at Hermie's Drive-In before he went there
to inquire about her, and that his real reason for going
was to find out ''if she was permanently employed and
was getting along all right''.

In rebuttal plaintiff offered to prove that on May
17, 1949, the defendant Hutchinson, in the office of the
protection department at Montgomery Ward, falsely
accused her of stealing a bottle of hand lotion, and that
on May 18, 1949, Hutchinson told the plaintiff that he
would personally see to it that she did not get unem-
ployment compensation, and on the same day he said
to her, ''Don't ever use Montgomery Ward as a refer-

ence because I will see that you are blackballed from any job that you get.'' Defendant's objections to the proposed testimony were sustained by the court on the ground that evidence of actual malice should have been given in the case in chief.

■ Upon the question thus raised the plaintiff invokes the general rule that ''When the defendant has established a prima facie case of privilege, it ordinarily devolves up the plaintiff to rebut this showing by showing of proof of actual malice, want of good faith'' etc. 3 Am Jur 245, Libel and Slander § 264. See, also, *Kilgore v. Koen*, 133 Or 1, 9, 288 P 192; Odgers on Libel and Slander (6th ed) p. 208; 53 CJS 162, Libel and Slander § 101; ALI Restatement, Torts § 613 and Comment f, p. 302.

■ If the alleged communication was privileged it was because Hutchinson had a moral or social duty to inform the Charnquists of the reason why the plaintiff had been discharged from Montgomery Ward. In *Upton v. Hume*, 24 Or 420, 428, 33 P 810, 41 Am St Rep 863, 21 LRA 493, we quoted with approval the following statement of the rule of qualified privilege involved from *Harrison v. Bush*, 5 E & B 348, 25 LJQB 29:

> ''A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminating matter, which, without this privilege, would be slanderous and actionable, and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation.''

See ALI Restatement, Torts § 595; Odgers, op cit. p. 206.

A common instance of a privileged communication made in pursuance of a moral or social duty is where the defendant is asked as to the character of his former servant by one to whom the servant has applied for a situation or by whom the servant is presently employed. Odgers, op. cit. 209, 210; 53 CJS 185, Libel and Slander § 107. Such a communication, it has been held, may be privileged even though it is volunteered (*Fresh v. Cutter*, 73 Md 87, 20 A 774, 25 Am St Rep 575, 10 LRA 67), although there is authority to the contrary (*Draper v. Hellman Commercial Trust & Savings Bank*, 203 Cal 26, 263 P 240).

■ In any view of the question, however, the privilege claimed here was established by the plaintiff in her case in chief. If a conditional privilege was not proved by the plaintiff is was not proved at all. That being so, it was incumbent upon plaintiff, if she would make a case sufficient to go to the jury, to introduce evidence in the first instance of actual or express malice so as to destroy the privilege. It was so held in *Kilgore v. Koen,* supra, where a publication in a newspaper was found to be qualifiedly privileged, and, since the evidence of the plaintiff showed the circumstances of the publication and no evidence of actual malice was introduced by the plaintiff, this court sustained a judgment of nonsuit. The court, therefore, committed no error in excluding the proffered evidence.

■ While the burden of proving malice where an occasion of privilege is shown always remains with the plaintiff, yet the order of proof may not always be the same, and it is only where the privileged occasion first appears in the defendant's case that, ordinarily, proof of actual malice to destroy the privilege constitutes proper rebuttal. Of course, the trial court has power

to vary the order of proof. ORS 17.210 (3), 17.215. The latter section reads:

"The order of proof shall be regulated by the sound discretion of the court. Ordinarily, the party beginning the case shall exhaust his evidence before the other begins."

■ Plaintiff applied to the court, after the ruling we have discussed, for leave to reopen her case in chief for the purpose of proving express malice. The court denied the request, and the denial is assigned as error. The application was addressed to the sound discretion of the court, and we cannot say that the discretion was abused in this instance. See *Prestbye v. Kliphardt,* 113 Or 59, 231 P 187.

■ The final assignment of error is directed to the court's overruling of plaintiff's objection, on the ground that it was leading, to the following question put on direct examination to the witness Hutchinson:

"Q  Did you at any time say to them, or either one of them, that she had been discharged for light-fingeredness?"

Under the statute ORS 45.560 the court had discretion to permit the question even though it was leading. Similar questions were held not necessarily leading in *Coates v. Slusher,* 109 Or 612, 621, 222 P 311. Dean Wigmore's discussion on this subject may be read with profit. 3 Wigmore on Evidence (3d ed) §§ 769, 772. We find no error in the ruling.

The judgment is affirmed.