Argued November 2, reversed December 7, 1960, opinion corrected, petition for rehearing denied January 11, 1961

## STATE OF OREGON *v.* KEREKES
357 P. 2d 413
358 P. 2d 523

R. *Thomas Gooding* and *W. K. Carey,* La Grande, argued the cause for appellant. With Gooding on the brief were Burleigh and Carey, La Grande.

*Jesse R. Himmelsbach, Jr.,* District Attorney, Baker, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and King, Justices.

GOODWIN, J.

Julius Kerekes appeals from a conviction of criminal libel.

The question for decision is whether qualified privilege is a defense to an indictment charging libel.

The facts essential to a decision of this question are partially revealed in the indictment itself, the charging portion of which follows:

"The said Julius Kerekes on the 27th day of June A.D. 1959, in the said County of Baker and State of Oregon, then and there being, did then and there unlawfully and wilfully cause false and scandalous matter concerning another to be published, to-wit: Did then and there send a letter to Mr. Paul R. Revis, City Manager of the City of Baker, at the City Hall Building, in Baker, Oregon, which said letter said in part: 'I would like to bring to your personal attention the action of Fred Still, Chief of Police, in coming to my home, waving a gun in a menacing manner, swearing, and threatening me; all in front of children and my nice neighbors. * * * Also for your personal attention the fact that my home was entered by Baker police and searched; rather ransacked is more appropriate, and four (4) of my good suits and an $880.00 diamond are missing. I have witnesses for the two (2) times that I know my home was robbed by the Baker police. * * *", he, the said Julius Kerekes, then and there intending to injure and defame Fred Still, said act of defendant being contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The offense of criminal libel is denounced by ORS 163.410, which reads in part:

"(1) Any person who wilfully, by any means other than words orally spoken, except as provided in this section, publishes or causes to be published

false and scandalous matter concerning another, with intent to injure or defame such other person, or any person who wilfully uses or utters over, through or by means of the radio, commonly called broadcasting, false and scandalous matter concerning another, with intent to injure or defame such other person, shall be punished upon conviction by imprisonment in the county jail for not less than three months nor more than one year, or by a fine of not less than $100 nor more than $500."

Kerekes entered a plea of not guilty and the jury trial took four days. The record explains the trial court's recommendation, in granting probation to the defendant, that he seek treatment for a possible mental disorder. Whether or not the defendant was in fact suffering from delusions is immaterial. The fact that he was a turbulent personality tends only to explain background events which otherwise might appear to be so bizarre as to invite attention away from the main question involved in this appeal.

Kerekes admitted upon trial that he mailed the letter described in the indictment, but denied any intention to defame. He proved that he had sought and had been refused audience by both the city manager and the district attorney before he wrote the letter. The city manager's official duties include the general supervision of the police department of the city of Baker.

Shortly before Kerekes sent the letter in question, he had been in the Baker city jail, serving a ten-day sentence imposed by the municipal court for disorderly conduct. The disorderly conduct of which he had been convicted consisted in calling a local woman a whore. Cf. *Barnett v. Phelps*, 97 Or 242, 191 P 502, 11 ALR 663. This particular episode grew out of a series of neighborhood disputes engaged in by Kerekes which

would qualify him for the description of a "common scold." Black, Law Dictionary, 1514.

When Kerekes was released from jail, he swore that he found his personal effects scattered about his house and that some items were missing. He concluded that his house had been ransacked by the police. He produced evidence that police officers had visited his house without permission during his absence. There was some independent evidence that his house was not as he had left it. There was also evidence from which it might have been inferred that his house was entered by others.

■■ There was, in summary, some evidence in support of the truth of each of the statements made by Kerekes in the portion of the letter quoted in the indictment. Some of the evidence was weak. Much was contradictory. There was a jury question, however, with reference to the truth of all the matters contained in the letter to the city manager. Unless overcome by the evidence, truth is to be presumed, and is a complete defense. *State v. Pierce,* 140 Or 1, 12 P2d 320.

■ The trial was conducted on the theory that the state had the burden of proving beyond a reasonable doubt that at least one of the defamatory statements made in the letter was false. The instruction was correct as far as it went. ORS 163.420. *State v. Pierce,* supra. However, mere falsity is not enough when privilege is involved.

The defendant requested an instruction based upon the general rule of qualified privilege which is quoted in *Cribbs v. Montgomery Ward & Co.,* 202 Or 8, 13, 272 P2d 978, as follows:

"A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a

duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminating matter, which, without this privilege, would be slanderous and actionable, and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation." [Quoted from *Harrison v. Bush,* 5 E & B 344, 348, 25 LJQB 29.]

While this court has had occasion in the past to deal with the defense of qualified privilege in civil-libel actions, this is apparently the first time we have been required to decide whether the defense is available in a criminal case. For civil cases, see review of earlier decisions in *Grubb v. Johnson et al,* 205 Or 624, 289 P2d 1067, and *Cribbs v. Montgomery Ward & Co.,* supra.

■ The state concedes that the defense is available in certain factual situations in civil litigation, but urges that the jury need not be instructed on qualified privilege in a criminal case. The state says that the defendant is adequately protected by the heavy burden of proof upon the state. It is also urged that the public policy behind the criminal libel statute is to prevent disorders and tumult. This policy, the state contends, makes privilege irrelevant. We believe this contention to be without merit. If it is proper to submit the defense of qualified privilege to a jury in a civil action, *a fortiori,* the same defense should be available in a criminal case where the defendant's liberty instead of his money is at stake.

■ The significance of the requested instruction on qualified privilege in the instant case is emphasized by evidence that Kerekes would have been justified in making at least a mild remonstrance to the police and to their supervising officer, even if he was mis-

taken and intemperate in the letter he actually wrote to the city manager. The jury was not permitted, however, to consider the elements of reasonableness and good faith which are inherent in the rule of qualified privilege. The jury was simply told that it could find Kerekes guilty if any part of his letter was false, i.e., mistaken. The question of innocent mistake was thus obscured. We cannot say that Kerekes was not prejudiced by the omission of the instruction, nor that the prejudice was cured by the giving of a standard instruction on the presumption of innocence.

Criminal cases are not so numerous as civil cases, but the defense of qualified privilege has been recognized by other courts.

*State v. Lambert,* 188 La 968, 178 S 508, reversed a criminal conviction where a father of minor children wrote a defamatory letter to a sister-in-law expressing a desire to remove his children from a home in which he thought the moral climate was intemperate. The court found that the letter was privileged, though false in fact.

Numerous civil cases have considered whether liability should be imposed when a citizen complains of official misconduct and the complaint later turns out to be more imaginary than real. Such cases are not to be confused with cases involving a claim of privilege where the defamatory material is published or broadcast in media of general circulation. See *Upton v. Hume,* 24 Or 420, 33 P 810, 41 Am St Rep 863, 21 LRA 493. The question of privilege in the mass-media cases is quite a different matter and we expressly decline to comment upon it in this case.

Where a townsman addressed a letter to the mayor complaining that a police officer was low-bred, vulgar,

overriding, coarse, insolent, brutal, and rude, that he was under the influence of liquor on the job and was a confessed liar, held, privileged. *Tyree v. Harrison,* 100 Va 540, 42 SE 295.

*Gatewood v. Garrett,* 106 Va 552, 56 SE 335, on facts similar to those of *Tyree v. Harrison,* supra, held the communication privileged, even though false in fact.

We quote from *Frank v. Dessena,* 5 NJ L J 185, 186:

"DIXON, J., said (in substance) the case made by the plaintiff is, that he was a special officer of the city of Paterson, appointed by the Mayor; that the defendants had presented a petition to the Mayor, declaring plaintiff to be dishonest, and asking for his removal. This petition is charged as a libel. The city charter provides, that the Mayor shall have power to appoint such officer, subject to confirmation. It also provides, that the Mayor, for reason given, can remove such officer. The case therefore is that of a communication presented to the Mayor, upon matters pertinent, for the removal of an officer, whom the Mayor has power to remove. Such a communication is unquestionably priviledged [sic]. Such a communication, therefore, must spring from express malice.

"In a case of this kind, the law requires that there must be shown a bad heart, on the part of those who make the communication. This the plaintiff has failed to do. The motion, therefore, is a proper one and the nonsuit is granted."

And in *Ambrosius v. O'Farrell,* 119 Ill App 265, 270, where instructions similar to those given in the case at bar were under consideration, we find:

"* * * * *

" 'The jury are instructed that every publication by writing or printing which falsely charges

upon or imputes to any one a crime which renders him liable to punishment or which alleges against him that which is calculated to make him infamous, odious or ridiculous in public estimation, is *prima facie* a libel, and malice is implied from the publication thereof.'

"Exceptions were preserved and error duly assigned upon the rulings of the court on the evidence at the trial and the giving of the instructions as above stated. Within the law of libel and liability for defamation of character official or private, the signing and presentation of the petition which is here alleged as the sole cause of action, was a qualified privilege, and under the facts in this case it was for the court so to instruct the jury. The defendants and other petitioners were acting within their legal right and privilege in this way to address the city council concerning the official conduct of the plaintiff, to state grievances as citizens and to ask redress. In so doing, if they act in good faith without malice or ill-will toward the person of the official complained of, and in the belief that the charges made are founded on fact, they may not be held to liability in damages even though the charge is that of a crime and may not be proved. They may not be required to justify or maintain the truth of the charges as required in the publication of defamatory writing when no privilege exists. On the other hand the law will not permit this salutary right and privilege of citizens to petition the ruler for a redress of grievances, to be used as a pretext and screen by the malicious and evil-disposed in order to traduce and defame the character and reputation of another. Under the issues made by the pleadings in this case, the petition and its publication being under a qualified privilege, the burden was upon the plaintiff to prove actual malice in the defendants, that is, that the purpose and motive of the defendants was to injure the plaintiff. Presumably the defendants acted in good faith, without malice, for the public good. Though the petition imputes crime to the plaintiff and

though the plaintiff is innocent, it must nevertheless be presumed in the start that the petitioners believed him guilty as recited in the petition. In a suit for libel where the question of privilege is not involved, malice is implied if crime is charged, and there is no escape from liability, unless the defendant can justify and prove the truth of the charge. The case is made by the plaintiff by proving publication of the defamatory words and from this malice will be implied and a cause of action established. But in this case no such implication arises, and malice, the gist of the action, must be proved. There is no conflict of authority in this State as to the rule. Besides, it is founded in reason. If the citizen with just cause of complaint may not question the conduct of officials, and the administration of public affairs, in a respectful way by petition to the proper authority, without being subject to an action of damage for libel unless he is prepared with witnesses to prove the truth of statements which are made the foundation of his complaint, a wholesome restraint upon official corruption, extravagance, and mal-administration, would be removed and the public would suffer. Often it is matter of common knowledge that there is failure to execute the laws and enforce the ordinances, especially those relating to the sale of intoxicating liquor, gambling and prostitution, and yet without the aid of the very officials whose conduct is questioned, the truth of the charge of mal-administration could not be proved  *  *  *."

■ We believe the quoted language of the Illinois court explains the applicable rule. Where a private citizen addresses a written complaint to a public official concerning a matter within the addressee's area of responsibility, the defense of qualified privilege is available in an action for libel, civil or criminal, and the jury should be instructed accordingly.

■ In dealing with the concept of qualified privi-

lege, it is necessary to observe that the qualifying factor is the absence of actual malice. Malice, in libel cases, has acquired a double meaning and requires further refinement. In cases which do not involve privileged communications, "malice" is said to be presumed from the false publication. This kind of presumed malice may or may not coexist with actual malice. See 1 Harper and James, The Law of Torts, § 5.27, p 450. In cases in which privilege is an issue, malice is not presumed from a published falsehood, but must be proven. Further, the "malice" which must be proven in order to eliminate the privilege must be actual malice of the kind described in *Frank v. Dessena,* supra, as denoting a "bad heart." Thus, the burden is upon the prosecution to show that what appears to be a privileged communication has in fact exceeded the privilege and thereby has lost it. *Ambrosius v. O'Farrell,* supra.

■ In a criminal prosecution for libel the burden of proof does not shift back and forth as it may in a civil action. A plea of "not guilty" requires the state to prove all elements of the crime, including the abuse, if any, of the privilege. The failure to instruct upon this element of the case requires reversal.

There are other assignments of error, but our disposition of the first assignment of error disposes of the case.

No stay of execution having been requested during the pendency of this appeal, the defendant has been on probation since the date of judgment. Upon receipt of the mandate, the action should be dismissed. Attorney fees for the court-appointed attorneys, if allowable under ORS 138.500, should be fixed by the trial court.

Reversed.

## ON REHEARING

Jesse R. Himmelsbach, Jr., District Attorney, Baker, for the petition.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and KING, Justices.

GOODWIN, J.

■ On petition for rehearing, the state asks the court to remand the cause for a new trial. The proposed mandate following our original opinion orders the defendant's discharge and the exoneration of bail. In the ordinary case, when reversal is required because of erroneous instruction, a new trial is ordered.

However, it is clear that a new trial need not be ordered unless it is "necessary or proper." ORS 138.240. The court is of the opinion that no useful purpose will be served by another trial. Prior to the first trial the defendant was committed temporarily to the Eastern Oregon State Hospital for a mental examination. He remained in custody for some time. Following his conviction the defendant was given a suspended jail sentence of one year and was ordered to return to the state hospital. The year has passed.

It is now contended by the state that the defendant has not been prejudiced by the events described because he was entitled to an automatic stay of execution upon filing notice of his appeal. ORS 138.130. The record does not make clear whether the defendant actually enjoyed a stay of execution or whether subsequent events resulted in further court appearances.

To the extent that our original opinion may have left the impression that the defendant must request a stay of execution, it is corrected to indicate that no stay of execution need be requested. ORS 138.130 grants the stay of execution automatically unless the defendant requests otherwise.

In adhering to our former opinion and ordering the mandate to go down discharging the defendant, or exonerating his bail as the case may be, we do not rely entirely upon the ambiguity in the record concerning events after sentence was pronounced. It is clear from the entire record that the trial judge correctly viewed the case as one which suggested medical rather than criminal procedures. It is neither necessary nor proper to put either party to the burden of another trial in this particular case.

Former opinion adhered to as corrected.