Argued June 28, decided December 31, 1910.

## STATE *v.* YEE GUENG.

[112 Pac. 424.]

CRIMINAL LAW—EVIDENCE—REVOLVERS.

1. Where, in a prosecution for the murder of a Chinese person, the State claimed that defendant and certain others were engaged in a conspiracy to kill deceased, who was killed by a shot from a 38-caliber revolver, the court did not err in admitting in evidence a 41-caliber Colt's revolver found about two hours after the shooting in a toilet where accused and another of the alleged conspirators were found hiding at the time of their arrest; there being other evidence indicating that they attempted to escape or resist arrest.

HOMICIDE—EVIDENCE—DYING DECLARATIONS—RELIGIOUS BELIEF.

2. While testimony as to dying declarations of deceased is admissible to show motive for false statements, a religious belief or the want thereof, or lack of confidence in future rewards or punishment, is not an element bearing on the credibility or weight of such declarations, and hence the court properly refused to charge that the jury could consider, as affecting the credibility of the declarant, that he did not believe in future rewards or punishment at the time he made such declarations.

WITNESSES—IMPEACHMENT—PARTY PRODUCING WITNESS.

3. Section 850, B. & C. Comp., provides that the party producing a witness may not impeach his credit by evidence of bad character, but may contradict it by other evidence, and show that he has made at other times statements inconsistent with his present testimony. *Held*, that such provision authorizes a party producing a witness who testifies adversely to him concerning some material matter to impeach such testimony in the manner described, but does not permit the party an inquiry as to matters, regarding which the witness has not given any testimony, or only given testimony of a weak and unsatisfactory character, and then to prove his statements at another time in reference to such matters.

WITNESSES—CONTRADICTION—INCONSISTENT STATEMENTS.

4. In a prosecution for killing a Chinese person, decedent in his dying statement said that accused belonged to a certain Tong, but did not indicate the faction thereof. The State produced a witness who was claimed to have been one of the conspirators, and he, having testified that he was a member of such Tong, was asked whether prior to the day he was arrested there was a split or division in the Tong. Witness refused to answer except that he did not know. *Held*, that the court erred in permitting the State to produce the record of the previous trial of the witness, and show by that that the witness had there testified on oath that there were two factions in the Tong before deceased's death and that witness and deceased belonged to different factions.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE KING.

In April, 1908, defendant, Yee Gueng, with Lem Woon, was jointly charged with the murder of Lee Tai Hoy. The homicide occurred as the decedent was ascending a stairway on the outside of the building where he lived, at the corner of Fourth and Pine streets, in Portland. The accused and Lem Woon, together with nine others of their race, lived in an apartment on the third floor of a building at the corner of Second and Oak streets, about three blocks easterly from the scene of the crime. In April, 1909, defendant was separately tried, denying any participation in the affair and attempting to prove

an alibi, found guilty of murder in the first degree, and from a judgment sentencing him to death appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Henry E. McGinn, Mr. John F. Logan, Mr. Ralph E. Moody* and *Mr. Frank F. Freeman,* with oral arguments by *Mr. McGinn* and *Mr. Moody.*

For the State there was a brief over the names of *Mr. Dan J. Malarkey, Mr. George J. Cameron,* district attorney, and *Mr. Joseph J. Fitzgerald,* deputy district attorney, with an oral argument by *Mr. Malarkey.*

MR. JUSTICE KING delivered the opinion of the court.

1. The first assignment, requiring our attention, relates to the admission in evidence of the 41-caliber Colt's revolver, found about two hours after the shooting in a toilet where the accused and Joe Bong, at the time of their arrest, were found hiding. It is unquestioned that the only shots fired, and which caused the death of Lee Tai Hoy, were from a 38-caliber revolver. Testimony also tends to show that two Chinamen accompanied the one who did the killing, and that they were present when the assailant fired the fatal shots. The 41-caliber revolver objected to was practically found in the possession of the accused at the time he appeared to be eluding the officers, and was offered in evidence in connection with and as an incident thereto. Since the circumstances tend to show an effort to escape, or to resist arrest, less doubt exists as to the admissibility of this evidence than in the case of *State* v. *Lem Woon,* 57 Or. 482 (107 Pac. 974), who, when arrested, was in a room adjoining that in which defendant was found, and who was not shown to have owned a weapon, or to have had one in his possession at or near the time of his arrest. We are of the opinion, therefore, that under the rule announced in *State* v. *Wintzingerode,*

9 Or. 153, the weapon found at the time of the arrest of the accused was properly admitted in evidence.

2. No error was committed in refusing the requested instruction, to the effect that the jury could take into consideration, as affecting his credibility, the fact, if established to its satisfaction, that the decedent did not believe in future rewards and punishments at the time of making his dying statement. Had declarant lived and taken the witness stand, this objection would not have been tenable, and, since dying declarations are admitted only on account of the exigencies of the occasion, so often discussed and so well understood, no reason exists in such a case for relying on any certain belief with reference to a future life, its rewards or punishments, any more than could be urged against a witness testifying in the presence of a jury. Every witness is presumed to speak the truth, and, under the law, the statements of a person made with full knowledge of impending death are entitled to the same presumption. The natural inclination of every sane person is to speak the truth on all occasions; exceptions thereto existing only by reason of some motive therefor. Testimony, relative to dying declarations, is admissible to show a motive for false statements; for example, such circumstances and incidents surrounding the last statements as may indicate a spirit of revenge or otherwise, a lack of ability to distinguish between persons or things, or incidents or statements tending to disclose doubts in the mind of the declarant, as to whether death is near at hand, etc., are admissible (*State* v. *Doris,* 51 Or. 136: 94 Pac. 44: 16 L. R. A. [N. S.] 660), but a religious belief or want thereof, or lack of confidence in future rewards or punishments, as the case may be, is not an adequate basis for that purpose.

3. Error is also predicated upon the attempt to impeach the testimony of Lem Woon, who was called by the State,

by the introduction in evidence of his statements made at his trial. The witness testified that on the night of March 7, 1908, he was arrested in the apartments where he, with Yee Gueng, was living; that he (Lem Woon) had been a member of the Bo On Tong for "7 or 8 years" in all; that eleven Chinamen made their headquarters in the same apartments where he had been stopping; and that he was acquainted with Lee Tai Hoy, who was a member of the Bo On Tong. The witness was then asked by counsel for the State:

"Now, was there prior to the day you were arrested a split or division in the district Bo On Tong of which you and Lee Tai Hoy were members?"

This question was objected to as incompetent, irrelevant, and immaterial, and after some discussion and a ruling of the court to the effect that the witness could not be required to incriminate himself, but could otherwise answer, the response was "I don't know."

"Q. Was there not shortly before the time you were arrested trouble in the Bo On Tong, causing two factions of the Bo On Tong?

"A. I don't know. I was at the canneries. I don't know about that. I am a laborer.

"Q. Is it not a fact that shortly prior to this day when you were arrested there was trouble in the Bo On Tong, causing its division into two factions, and that you belonged to what was known as the old party or the old faction, and Lee Tai Hoy belonged to what was known as the new party or the new faction?

"A. I don't know anything about it."

The witness was then asked whether he remembered the circumstances of his testifying in his own behalf "when he was tried in this court last June," to which he answered in the affirmative. For the purpose of refreshing the witness' memory, his attention was then directed to his testimony on that occasion, and the ques-

tions and answers given in the former trial, hereinafter quoted, were read to him, to which he responded:

"When I was tried last year, I said I belonged to the Portland Bo On Tong, but I don't know which party Lee Tai Hoy belonged to."

He was then asked if he did not in the former trial testify as follows:

"Q. Was there any trouble between the different factions of the Bo On Tong just before the 6th of the second month of Kwong Sui—or, was there any trouble in the Bo On Tong before Lee Tai Hoy's death, between the different factions? And did you not answer that Lee Tai Hoy and Chong Young kept the Bo On Tong's money, no account, kept $3,000?
"A. Yes.
"Q. And there were two factions of the Bo On Tong, were there not?
"A. I don't know.
"Q. What do you mean by saying there was trouble between the factions because Lee Tai Hoy kept some money?
"A. Lee Sing Shue is the man that takes care of the accounts I suppose."

Counsel for the State then offered in evidence the testimony taken at the former trial as follows:

"Q. Which faction of the Bo On Tong do you belong to?
"A. I belong with the old party.
"Q. Which faction did Lee Tai Hoy belong to?
"A. New party."

The counsel for the defense objected to the introduction in evidence of the record of Lem Woon's former testimony, as well as to each of the questions above set forth, on the ground that the same was incompetent, irrelevant, and immaterial.

Under Section 850, B. & C. Comp., a party producing a witness may, under some circumstances, introduce evidence contradicting his statements, or show that he has

at other times made statements inconsistent with his present testimony. In construing this section in *Langford* v. *Jones,* 18 Or. 307, 326 (22 Pac. 1064, 1071), Mr. Justice THAYER, speaking for the court, after making observations to the effect that it was intended thereby to permit the party producing the witness to contradict him by other evidence, etc., remarks:

"But that section does not allow the party to inquire about matters regarding which the witness has not given any testimony or testimony of a weak and unsatisfactory character, and then prove his statements made at another time in reference to such matters. The intent of the provision was to allow a party producing a witness who testifies adversely to him regarding some matter which directly affects the merits of the case to impeach such testimony in the manner there pointed out. The object of the section was to prevent the party from being prejudiced by the evidence of his own witness."

After citing this case with approval, Mr. Justice MOORE, in *State* v. *Steeves,* 29 Or. 85, 104 (43 Pac. 947, 952), observes:

"The rule appears to be well settled that a party cannot impeach his own witness by showing he has made statements inconsistent with the testimony given at the trial, unless the testimony so given be material and prejudicial to the interests of the party calling him."

Applying the rule thus announced to the case in hand, it will be observed that the witness gave no testimony directly adverse, or prejudicial, to the State. He was asked whether certain conditions existed, and the tenor of his responses was to the effect that he did not know, or could not furnish the desired information, implying, not that he had not made the statements attributed to him at his own trial, but that the statements if made were untrue. It was merely "testimony of a weak and unsatisfactory character," such as adverted to in *Langford* v. *Jones*, and suggested in *State* v. *Steeves*.

Giving to the entire oral testimony of this witness its full effect, it fails to disclose that the accused belonged to a faction different from that of which the decedent was a member, and the only information from which it may be inferred that he belonged to a different faction is the mere circumstance that the accused was living in the same apartments as Lem Woon, whom the excerpts from his former testimony indicated belonged to the old wing of the Tong and Lee Tai Hoy to the new. The declarant in his dying statements said the accused belonged to the Bo On Tong, but did not indicate the faction thereof. Nor, except as above stated, was it sought to be proved that he affiliated with the old party, of which the declarant was not a member.

4. One of the manifest purposes for which this witness was called and for which this testimony was elicited was to establish the fact that the accused was a member of a faction of the Bo On Tong unfriendly to the faction of that society to which decedent belonged. Had the witness testified, not as anticipated by the State, that he belonged to the same faction as decedent, then such testimony would have been adverse to the State and a surprise to counsel, in which event any previous statements made by him contradictory of this testimony would have been admissible under Section 850, B. & C. Comp., but only for the purpose of impeaching the witness, and not as direct evidence of the material fact sought to be shown in the first instance. As stated by Mr. Justice MOORE in the Steeves case:

"This is as far as the rule can be legitimately carried, and courts should carefully guard against its abuse by the party producing the witness, for, if the (previous) statements made by him could be admitted in evidence in support of the cause of the party calling him, a witness in league with such party might make statements out of court, and not under oath, which he knew were false, and, being called as a witness, could truthfully

testify concerning the facts in issue and against the party calling him; and, upon his denying that he made the statements attributed to him, or claiming that he failed to remember of having made them, evidence thereof could be introduced, not for the purpose of excusing the mistake made in calling the witness, or to correct the effect of the adverse testimony, but as substantive evidence in support of the cause of the party calling him, thus permitting a party to do by indirection what he could not do directly."

The testimony complained of was received, not for the purpose of merely contradicting the statements of a witness testifying adversely, for that did not occur, but as direct and substantive evidence of a material fact in the case, which it was expected to be established by the witness himself.

Nor can the fact that the former statements were made under oath change the rule, for the accused in this case, although jointly indicted with Lem Woon, was not on his trial at that time, was not present when the statements were made, and had he been present would have had no opportunity to cross-examine the witness or to dispute his assertions: *Patty* v. *Salem Flouring Mills Co.*, 53 Or. 350, 353 (96 Pac. 1106: 98 Pac. 521: 100 Pac. 298).

The admission of this testimony forcibly tended to impress the jury that what was proved in the case in which Lem Woon was convicted of murder in the first degree should apply with equal force against this defendant, the prejudicial effect of which is obvious.

The judgment must therefore be reversed, and a new trial ordered.                                        REVERSED.

---

Decided December 31, 1910.