Argued April 15; reversed May 13, 1941

# BENNETT *v.* SPAGELE

(113 P. (2d) 207)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*W. Y. Masters*, of Portland, for appellant.

*F. M. Phelps*, of Portland (Phelps & Burdick, of Portland, on the brief), for respondent.

450

RAND, J. Plaintiff brought this action to recover for personal injuries received by him on July 11, 1939, while he was engaged in painting a house belonging to the defendant. The injuries resulted from the breaking of a ladder furnished by the defendant. The cause was tried to a jury and, from a judgment based on the verdict, the defendant has appealed.

The question in issue was: By whom was the plaintiff employed at the time he sustained the injury complained of? He alleged in his complaint that he was in the employ of the defendant. This allegation was denied by the answer which, among other things, alleged that the plaintiff was employed by A. B. Fredin & Son, a contracting firm which had contracted with the defendant to do the carpenter work for the repair of the building. The plaintiff testified that he had been employed by the defendant to paint the building and was so engaged at the time he sustained the injury complained of. The defendant testified that, before the work of painting was commenced, he did employ the plaintiff to paint the building and agreed to pay him for such work at the rate of sixty cents per hour, but that subsequently and before any work had been done by the plaintiff, defendant, with plaintiff's consent, cancelled said contract and entered into a contract with A. B. Fredin & Son, by which that firm agreed to take over the contract of painting and to employ the plaintiff to do the work and to pay plaintiff therefor at the same rate per hour for his services, and that, pursuant to such contract, the plaintiff was in the employ of said firm at the time the accident occurred.

It appears from the undisputed evidence that the firm of A. B. Fredin & Son, at said time, was a contributor to the state industrial accident fund and was under the protection of the workmen's compensation

act, and that the defendant was not a contributor and was not protected by the act.

The defendant further testified that, as a part of his contract with said firm, it was agreed that the firm would pay all sums which should become due and owing on account of plaintiff's said work to the State Industrial Accident Commission, the State Unemployment Commission and the Federal Social Security Commission, and that the defendant would repay the firm all sums so paid, and also the wages paid by them to the plaintiff for the work done by him on said building.

The painting of buildings is defined as a hazardous occupation by section 102-1725, O. C. L. A., and, under section 102-1722, it is a misdemeanor for any employer to engage in a hazardous occupation "unless and until such employer shall have filed with the commission a statement in writing, giving the name and address of the employer and describing the hazardous occupation in which the employer is engaged or proposes to engage". That section further provides that any employer who shall engage in a hazardous occupation, without giving such notice, shall not be entitled to the benefits or protection of the act.

It was undisputed upon the trial that, shortly before this case was tried, A. B. Fredin, a member of said firm, went to the office of defendant's attorney and left with him and the defendant a time-book, showing the number of days that the plaintiff had been employed at work on the building prior to the time of the accident, and also the number of days that other workmen had been employed by said firm not only before but during and after the time the plaintiff was engaged in painting the building, and that, at said time, he also left with defendant's attorney the receipts

which said firm had received from the three commissions above referred to for the moneys paid by the firm on account of plaintiff's said work on the building, and other documents which, on their face, tended to show that the plaintiff was an employee of said firm and was not in the employ of the defendant when he met with the accident above referred to. It was also stipulated that if said attorney for the defendant was called as a witness he would testify to all said facts.

A. B. Fredin was called as a witness on behalf of the defendant and, instead of testifying as was expected by the defendant, he testified that the plaintiff had never been in the employ of A. B. Fredin & Son and was in the employ of the defendant when the accident occurred.

■ In order to contradict said witness, the defendant offered in evidence said time-book and certain of the other documents above referred to and, upon objection being made by plaintiff's attorney to the admission thereof, the same were excluded by the trial court from the consideration of the jury. This clearly was reversible error and deprived the defendant of a fair trial. It is always competent in this state for a party to prove that a witness whom he has called and whose testimony is unfavorable to his cause had previously stated the facts in a different manner than that testified to upon the trial of the cause. The right to make such a showing is established by statute in this state.

Section 4-709, O. C. L. A., in part provides:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in section 4-712; * * *"".

Section 4-712 provides:

"A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places, and persons present; and he shall be asked whether he has made such statements, and if so, allowed to explain them. If the statements be in writing, they shall be shown to the witness before any question is put to him concerning them."

It appears from one of the documents rejected by the court and which had been left by Fredin with the defendant and his attorney that Fredin had made and signed a report to the State Industrial Accident Commission of the accident sustained by the plaintiff in which he made, in writing, the following statements concerning said accident, and this was admittedly in the handwriting of A. B. Fredin and signed by him, to wit:

"Did you have personal knowledge of this injury? Yes. To whom was accident reported? Owner. Do you contribute to the Accident Commission on this workman's wages? Yes. What kind of work? Painting. What is workman's daily wage or average daily earnings? $4.80. Is he regularly employed Sundays? No. Will he be paid any wage while disabled? No. How much hospital dues do you charge men per month? $— Is the information furnished by the workman on part I of this form correct? Yes. When reported? July 11, '39. State any reasons you may have why the validity of this claim should be questioned: None.
Firm name Fredin & Son
Business Bldg. Erection

Signed by A. B. Fredin, Title Pardner
Address 2405 SW 2d Ave.

Signed at Portland, Oregon, this 15 day of July, 1939."

When Fredin was required, in making the above report to the State Industrial Accident Commission, to state any reasons he might have why the validity of plaintiff's claim against the industrial accident fund should be questioned and he answered "none", he obviously, if what he now says is true, was attempting to defraud the State Industrial Accident Commission of the moneys which it would be required to pay to the plaintiff if said report was accepted and acted upon by said commission.

While these documents were not substantive or independent evidence of the statements contained in them, they were clearly admissible for the purpose of impeachment and to test the credibility of the witness. If considered for any other purpose than that of impeachment, they would be inadmissible and purely hearsay.

■ There are numerous other assignments of error which occurred upon the trial. Among these are statements which the defendant testified that Fredin had made to him concerning his employment of the plaintiff, which, on motion of the plaintiff, was withdrawn from the consideration of the jury. This also constituted reversible error, but since this case must be remanded for a new trial and it is unlikely that these errors will be committed at the next trial, it is unnecessary to refer more specifically to them.

For the reasons stated, the judgment is reversed and the cause remanded to the court below for a new trial.