Argued October 31, reversed and remanded December 26, 1975

RHODES, *Respondent, v.* HARWOOD, *Appellant.*
RHODES, *Respondent, v.* HARWOOD, *Appellant.*
544 P2d 147

*Edward H. Warren,* Portland, argued the cause

for appellant. With him on the briefs were Hershiser, Mitchell & Warren, Portland; Darst B. Atherly, of Thwing, Atherly & Butler, Eugene, and Larry J. Anderson, of Anderson & Richmond, Eugene.

*Bruce E. Smith*, Eugene, argued the cause for respondents. With him on the brief were Young, Horn, Cass & Scott, Eugene.

## TONGUE, J.

These are consolidated actions for personal injuries sustained by plaintiffs as the result of an alleged assault and battery and also for damages from an alleged trespass.[1] Defendant appeals from an adverse judgment based upon a jury verdict awarding $5,000 general damages and $5,000 punitive damages to each of the two plaintiffs, in addition to special damages in the sum of $123.75 and $25, respectively, for assault and battery, together with the sum of $1 general damages and $1,500 punitive damages for trespass.

Defendant assigns as error the overruling of her objection to evidence offered by plaintiffs to show that defendant's son, who had been called by plaintiffs as a witness, made a prior inconsistent statement which was received both for the purpose of impeachment and also as substantive evidence. Defendant also assigns as error the failure of the trial court to set aside the award of $1,500 as punitive damages in the cause of action for trespass in each case in view of the award of only $1 as general damage for trespass in each case.

---

[1] Two actions brought by plaintiffs, husband and wife, both alleging an assault and battery and a trespass by defendant arising out of the same incident, were consolidated for trial and appeal.

*The facts.*

The facts need not be stated in detail. There was a direct conflict in the testimony of plaintiffs and that of defendant and her husband relating to the events of the alleged assault and battery and the alleged trespass.

Plaintiffs were tenants in a small house owned by defendant and her husband. They testified that defendant became angry because one of them had climbed on the roof of the house to straighten the TV antenna and came to the house with a pistol, which she pointed at both plaintiffs and shot into the house, and that she also struck both of them—one with the pistol, causing it to fire.

Defendant not only denied the assault and battery and the trespass, but testified that she did not see the plaintiffs on that day and had never owned or fired a pistol.

According to plaintiffs' testimony no third persons were present or witnessed the incident, but bullets were found in the woodwork of the house.

In plaintiffs' rebuttal case they called as a witness Lorren Harwood, one of defendant's adult sons, who testified that he did not become "aware" of the "alleged incident" until "probably two weeks later." He was then asked:

"Q Did you ever have any knowledge that your mother gave a gun or caused a gun to be given to your brother, Michael Harwood?

"A No, sir.

"* * * * *

"Q BY MR. SMITH: Did you ever tell anyone else that your mother tried to hurt some hippies and give a gun to Mickey or Michael, your brother, to hide?

"A No, sir.

"Q Do you know a Melvin Zoller, Junior?

"A Yes, sir.

"Q Now, a couple weeks after October 3, 1972, were you employed and working in the same plant with Melvin Zoller, Junior?

"A I was working in the same area but not employed by the same person; no, sir.

"\* \* \* \* \*

"Q At that time, approximately two weeks after this incident, did you tell Melvin Zoller that your mother tried to hurt some hippies and gave the gun to your brother, Mickey?

"A No, sir."

Plaintiffs then called Melvin Zoller, Jr., as a witness and, over objection by defendant, offered both "for impeachment" and "as substantive proof" the following testimony:

"Q BY MR. SMITH: What did Mr. Lorren Harwood tell you at that time, Mr. Zoller?

"A Well, that his mother had gotten involved in a shooting incident with some hippies that lived on their property. And it was kind of a mill story going around and so I asked him about it because I worked with him and he said that his mother had gotten crazy and took a shot at somebody and that they had probably gotten rid of the gun through Mickey."

*Contentions by parties.*

In support of her first assignment of error defendant contends: (1) that this testimony by Mr. Zoller was improperly received for purposes of impeachment because a party cannot impeach his own witness by proof of a prior inconsistent statement unless the testimony of the witness to be impeached was prejudicial or damaging to the party calling that wit-

ness, and (2) that such testimony was not admissible as substantive evidence because it was hearsay.

Plaintiffs respond by contending: (1) that under ORS 45.590 a party may impeach his own witness by proof of a prior inconsistent statement whether or not the testimony of that witness was prejudicial or damaging to him; that the requirement of prejudice or damage has "probably been disregarded more than it has been followed" by this court[2] and is criticized by modern authorities;[3] and that, in any event, the testimony of defendant's son "that he did not have any knowledge or information that his mother had been involved, nor any knowledge that his mother gave the gun to his brother Michael" was prejudicial or damaging to the plaintiffs' case; and (2) the testimony of Mr. Zoller was admissible as substantive evidence because defendant's son was available in court and that under such circumstances modern authorities would hold that a prior inconsistent statement is admissible as substantive evidence.[4]

---

[2] Citing *State v. McDaniel,* 39 Or 161, 65 P 520 (1901); *City of Woodburn v. Aplin,* 64 Or 610, 131 P 516 (1913); *State v. Rosser,* 162 Or 293, 86 P2d 441, 87 P2d 783, 91 P2d 295 (1939); *State v. Young,* 1 Or App 562, 463 P2d 374 (1970); *State v. Gardner,* 2 Or App 265, 467 P2d 125 (1970), rev den, cert den, 406 US 972 (1972); *State v. Green,* 3 Or App 411, 474 P2d 9 (1970); and *State v. Anderson,* 10 Or App 34, 497 P2d 1218 (1972), appeal dismissed, 410 US 920 (1973).

[3] Citing McCormick on Evidence 72-75, § 38 (2d ed 1972); Fed Rules Evid 607, 28 USCA (1975).

[4] Citing McCormick on Evidence, *supra* n. 3, at 601-608, § 253; Lacy, Oregon Evidence Laws in the Sixties: Problems, Patterns and Projections, 49 Or L Rev 188, 198 (1970); 4 Weinstein on Evidence § 801 (1975); Proposed Federal Rules of Evidence, Rule 801(d)(1); Uniform Rules of Evidence, Rule 801(d)(1) (1975); Model Code of Evidence, Rule 503 (1942); Ladd, Some Observations on Credibility; Impeachment of Witnesses, 52 Cornell L Q 239, 250 (1967); and also citing *Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 503 P2d 482 (1972).

1. *The prior inconsistent statement by plaintiffs' witness in this case was not admissible for impeachment because his previous testimony was not prejudicial to plaintiff.*

ORS 45.590,[5] as originally adopted in 1862,[6] has been interpreted by this court in many cases as permitting the impeachment by a party of his own witness by proof of a prior inconsistent statement only when the testimony of the witness has been prejudicial or damaging to the party calling him.[7] Cases in which such testimony has been held admissible, including those cited by defendant as holding to the contrary, are distinguishable on their facts in that in most, if not all, of such cases the witness had given

---

[5] ORS 45.590 provides as follows:

"*Impeachment of own witness.* The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in ORS 45.610. However, when a party calls as a witness either an adverse party or the assignor, agent, officer or employe of an adverse party, he shall not be deemed to have vouched for the credit of that witness and he may impeach the credit of that witness in the same manner as in the case of a witness produced by an adverse party."

[6] Deady, General Laws of Oregon, Oregon Laws 1862, ch 9, § 828.

[7] *Langford v. Jones,* 18 Or 307, 326, 22 P 1064 (1890); *State v. Steeves,* 29 Or 85, 103-05, 43 P 947 (1896); *State v. Yee Gueng,* 57 Or 509, 512-16, 112 P 424 (1910); *State v. Merlo,* 92 Or 678, 695-703, 173 P 317, 182 P 153 (1919); *Tauscher v. Doernbecher Mfg. Co.,* 153 Or 152, 161-63, 56 P2d 318 (1936); and *State v. Briggs,* 245 Or 503, 508, 420 P2d 71 (1967).

See also: *Wigan v. LaFollett,* 84 Or 488, 495-96, 165 P 579 (1917); *State v. Duggan,* 215 Or 151, 163, 333 P2d 907 (1958); and *State v. Nichols,* 236 Or 521, 540, 388 P2d 739 (1964).

The Oregon Court of Appeals has also recognized the same rule in *State v. Roisland,* 1 Or App 68, 74-75, 459 P2d 555 (1969); and *State v. Ward,* 16 Or App 162, 517 P2d 1069 (1974).

testimony which was prejudicial or damaging to the party calling him.[®]

[®] *State v. McDaniel,* 39 Or 161, 175-76, 65 P 520 (1901); *State v. Jennings,* 48 Or 483, 489, 87 P 524, 89 P 421 (1906); *City of Woodburn v. Aplin,* 64 Or 610, 622, 131 P 516 (1913); *Reimers v. Brennan,* 84 Or 53, 57-58, 164 P 552 (1917); *Garvin v. Western Cooperage Co.,* 94 Or 487, 502, 184 P 555 (1919); *State v. Rosser,* 162 Or 293, 348, 86 P2d 441, 87 P2d 783, 91 P2d 295 (1939); *Bennett v. Spagele,* 166 Or 449, 452, 113 P2d 207 (1941); and *State v. Cain,* 230 Or 286, 290, 369 P2d 769 (1962).

In *State v. Bartmess,* 33 Or 110, 54 P 167 (1898), the testimony to be impeached was not so clearly prejudicial, but was held to be "equivocal" and "shaded" to defendant's "advantage," which was apparently regarded as satisfying the requirement of "prejudice," and both *Langford v. Jones,* 18 Or 307, 22 P 1064 (1890), and *State v. Steeves,* 29 Or 85, 43 P 947 (1896) (in which that requirement was established), were cited as authority. Moreover, *Bartmess* was decided prior to *State v. Merlo,* 92 Or 678, 173 P 317, 182 P 153 (1919), which clearly stated the rule that the testimony of the witness must have been prejudicial.

In *State v. Haynes,* 120 Or 573, 253 P 7 (1927), and *Lynn v. Stinnette,* 147 Or 105, 115, 31 P2d 764 (1934), a state witness who did not testify as fully as desired by the state was impeached by a prior written statement without citation of authorities or discussion of the problem of prejudice. Both cases were decided prior to *Tauscher v. Doernbecher Mfg. Co.,* 153 Or 152, 56 P2d 318 (1936), in which the rule of "prejudice" was again clearly stated.

In *State v. Holleman,* 225 Or 1, 357 P2d 262 (1960), it does not clearly appear whether or not the testimony of the witness was "prejudicial," but the court (at p 6) cited *State v. Merlo, supra,* which stands for the rule that the testimony of the witness must have been prejudicial.

Decisions by the Oregon Court of Appeals are more equivocal. In *State v. Gardner,* 2 Or App 265, 467 P2d 125 (1970), rev den, cert den, 406 US 972 (1972), the owner of a tavern which had been robbed, when called as a witness for the state, testified that he did not know how much money was found by him in the pockets of the defendant. The state was then permitted to offer in evidence a prior statement to the effect that he had then found "eighty some dollars in his pocket." The Court of Appeals recognized the requirement of prejudice, citing *State v. Merlo, supra,* and held (at 267-68) that the testimony of the witness was prejudicial in the sense that it would indicate that he "had so little concern about it as to raise a question in the minds of the jury whether it was, in fact, his money."

In *State v. Green,* 3 Or App 411, 474 P2d 9 (1970), and

The reasons for the rule requiring that the testimony of a witness must itself be prejudicial or damaging to the party calling him before he may properly impeach that witness by proof of a prior inconsistent statement, as stated by this court in *Langford v. Jones*, 18 Or 307, 327, 22 P 1064 (1890), the first case in which it considered this question, are as follows:

"* * * To allow a party, after calling him as a witness and failing to elicit from him any advantageous testimony, to prove that the witness at some other time and place had made statements favorable to the claim of the party, is a strange mode of securing proof. It would be a kind of evidence which I could not distinguish from hearsay. Counsel for appellant cited a number of authorities to show that such a course was not permissible; but I think that the bare statement of the proposition is a sufficient refutation of its correctness. If it were proper, a case could be made out many times by proof of what third persons had said; it would only be necessary to call the persons as witnesses and attempt to show by them the substance of the matter embraced in the statements, and having failed in that, then to prove what such persons had said at another time and place, when they were not under oath, and obtain the

*State v. Anderson*, 10 Or App 34, 497 P2d 1218 (1972), appeal dismissed, 410 US 920 (1973), the Oregon Court of Appeals affirmed convictions in which witnesses called by the state had been impeached by it by the offer of prior inconsistent opinions from which it does not clearly appear whether or not there was prejudice by the testimony of such witnesses.

To the same effect, see *State v. Young*, 1 Or App 562, 463 P2d 374 (1970).

In the latest decision by the Court of Appeals on this subject, *State v. Ward*, 16 Or App 162, 165, 517 P2d 1069 (1974), that court again recognized the rule that "a party may introduce a prior inconsistent statement to impeach his own witness only if the witness gives testimony prejudicial to the party," citing *State v. Merlo, supra*, among other cases.

benefit of that as direct evidence of the fact. Such a construction would enable parties to employ as a sword what was intended as a shield. Instead of availing themselves of the benefits of the statutory rule in order to avoid the effect of damaging testimony given against them by a witness called to prove a fact in their favor, they could make use of it for the direct purpose of establishing the fact. It is enough to say that the legislature never intended by said provision of the Code to adopt any such absurdity."

To the same effect, see *State v. Steeves,* 29 Or 85, 103-05, 43 P 947 (1896); and *State v. Merlo,* 92 Or 678, 173 P 317 (1919).

In *State v. Merlo, supra,* in an exhaustive opinion by Justice Harris, discussing this question in detail, it was held (at 699) that in order to constitute prejudice so as to entitle a party to offer in evidence a prior inconsistent statement by a witness called by him, the witness must have given testimony "which relates to a material matter and is prejudicial to the party calling him" and that it is not sufficient that the witness "fails to testify as strongly as was expected, or gives testimony which is favorable to neither party." In that case it appears (at 695) that the state's witness had said "I don't know" when asked by the state's attorney who started a quarrel which resulted in a murder.

This is in accord with a previous decision by this court in *State v. Yee Gueng,* 57 Or 509, 512-17, 112 P 424 (1910), in which a witness called by the state said that he "didn't know anything about it," the court holding that the state could not then impeach the witness by offering in evidence a prior statement made by him. To the same effect, this court subsequently held in *Tauscher v. Doernbecher Mfg. Co.,* 153 Or 152, 161-63, 56 P2d 318 (1936), citing *State v. Merlo,*

*supra,* that the requirement of prejudice was not satisfied in an assault case in which a witness called by plaintiff, when asked if he saw the assault, answered "No," the court holding that it was error to admit into evidence a prior statement by the witness that he "saw these men beating up * * *."

This court has subsequently cited *State v. Merlo, supra,* with approval in numerous other decisions.[9]

██ In this case defendant's adult son, when called as a witness by plaintiffs, testified that he did not "have knowledge or information" that his mother was "involved in that gun incident" and did not "have any knowledge" that his mother "gave a gun or caused [a gun] to be given" to his brother.

Plaintiffs contend that this is "much more than saying 'I don't know' "; that the inference to be drawn from that testimony by the jury is that "[a] son who knew his mother was claimed to be an assailant would normally have this information" and that the son of the defendant is "in effect saying that his mother was not involved." Despite this ingenious argument, we are unable to distinguish on any satisfactory basis the facts of this case from the facts involved in *Merlo, Yee Gueng* and *Tauscher.*

It should also be noted that in this case there is no contention that the son was present at the time of the alleged altercation so as to have any firsthand knowledge of what happened at that time, while in those cases the party calling the witnesses contended that they had firsthand knowledge of the events about which they professed to know nothing. Thus, any "knowledge" that defendant's son would have had of

[9] *State v. Dixson,* 212 Or 572, 580, 321 P2d 305 (1958); *State v. Duggan,* 215 Or 151, 163, 333 P2d 907 (1958); *State v. Holleman,* 225 Or 1, 6, 357 P2d 262 (1950); *State v. Nichols,* 236 Or 521, 540, 388 P2d 739 (1964). See also *State v. Briggs,* 245 Or 503, 508, 420 P2d 71 (1967).

the incident must have been based on what he was told by others. As stated in *Langford v. Jones, supra,* the primary reason for the rule prohibiting the impeachment of a witness by proof of a prior inconsistent statement is to prevent abuse through the offering in evidence of hearsay statements which the jury may well consider as substantive evidence.

For these reasons we are of the opinion that we must hold that the trial court erred in permitting the plaintiffs to offer the testimony of Mr. Zoller relating to the prior inconsistent statement by defendant's son unless we are prepared to overrule *State v. Merlo, supra,* and the entire line of cases in which this court has recognized the rule that the testimony of the witness must be prejudicial or damaging to the party calling the witness before evidence of a prior inconsistent statement may be offered to impeach that witness. This we decline to do because we are convinced that the rule as stated in our previous cases is a sound and salutory rule despite criticism of that rule, as subsequently discussed.

2. *The prior inconsistent statement by plaintiffs' witness was also not admissible as substantive evidence, because defendant's son did not have first-hand knowledge of the facts stated.*

As previously stated, plaintiffs contend that the testimony of Mr. Zoller that he heard Lorren Harwood say that "his mother had gotten crazy and took a shot at somebody and that they had probably gotten rid of the gun through Mickey" was also admissible as substantive evidence because Lorren Harwood was available in court in the event that he denied making that statement.

Plaintiffs recognize that such a result is contrary to our recent decision in *State v. Derryberry,*

270 Or 482, 528 P2d 1034 (1974), decided after the trial of this case, but urge that we overrule that case and follow the rule as stated in Rule 801(d) (1) of the proposed Federal Rules of Evidence, and also as stated in the proposed Uniform Rules of Evidence at that time.[10]

Before discussing those proposed rules, however, we note that this is not a case in which the prior contradictory statement which is sought to be offered as substantive evidence would have been admissible in evidence if testified to by the previous witness. On the contrary, even if Lorren Harwood had attempted to testify that "his mother had gotten crazy and took a shot at somebody and that they had probably gotten rid of the gun through Mickey," that testimony would have been inadmissible either as hearsay or for lack of firsthand knowledge—at least insofar as it related to the shooting incident—because Lorren Harwood was not present at that incident and could only have been told about it by some other unknown person.

As stated in McCormick on Evidence 20-21, § 10 (2d ed 1972):

"This requirement [firsthand knowledge] may easily be confused with the hearsay rule which bars the repetition of out-of-court statements described as hearsay under that rule. Technically, if the testimony of the witness on its face and in form purports to be testimony of observed facts, but the testimony is actually repetition of statements of others, the objection is that the witness lacks firsthand knowledge. If the form of the testimony indicates the witness is repeating out-of-

---

[10] Plaintiffs also contend that this evidence is admissible as substantive evidence for the same reasons as recognized by this court in *Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 503 P2d 482 (1972). As we view that case, however, it *is* neither controlling nor persuasive in this case, which involves far different facts.

court statements, the hearsay objection possibility is raised. Often courts disregard this distinction."

For these reasons, we are again of the opinion that we must hold that the trial court also erred in permitting plaintiffs to offer the testimony of Mr. Zoller as substantive evidence unless we are prepared to overrule our recent decision in *State v. Derryberry, supra,* and adopt the Rule 801(d)(1), as stated in the proposed Federal Rules of Evidence or Rule 63(1) of the proposed Uniform Rules of Evidence at that time.

Because of the importance of these questions, however, and because of recent criticism of these long-established rules relating to the admissibility of prior inconsistent statements both for purposes of impeachment and as substantive evidence, we shall reconsider them in the light of such criticism.

3. *Consideration of proposals to modify or eliminate the requirement of "prejudice" as a condition for the admission of proof of a prior inconsistent statement and to receive such statements as substantive evidence.*

A. *The "damaging impression" theory.*

In *People v. LeBeau,* 39 Cal 2d 146, 245 P2d 302 (1952), the California Supreme Court adopted the so-called "damaging impression" approach to the problem of whether, and the extent to which, prejudice must be shown before a prior inconsistent statement may be offered in evidence for purposes of impeachment. Under the rule of *LeBeau* it would no longer be required that the witness to be impeached gave affirmative testimony that was prejudicial to the party calling him. It would be sufficient that the witness gave an "I don't know" answer if a "damaging impression" was created such as an impression to

the effect that the witness was being harassed and browbeaten by the attorney for the party calling the witness.

The rule of *LeBeau* has been the subject of considerable discussion among the commentators, mostly unfavorable. First of all, the commentators recognize that most courts follow a much more strict rule of "prejudice," as follows:

> "When a witness' testimony on trial is inconsistent with his prior statements, courts generally require that the calling party's case be prejudiced before impeachment will be allowed. * * * Thus, under the general rule, the testimony given must contradict in a real sense the earlier statement, and any mere denial or forgetfulness on the part of the witness is not ground for impeachment."[①]

The reasons for this rule are reminiscent of those stated many years ago by this court in *Langford v. Jones, supra,* and *State v. Merlo, supra,* and have been stated as follows:

> "To minimize misuse of the impeachment privilege, courts admit prior statements of a party's witness only in limited circumstances. Generally, the witness must have 'entrapped' or 'surprised' the party by his testimony at the trial. This forestalls the possibility that counsel will place the witness on the stand, knowing his testimony will be unfavorable, solely to introduce a prior statement of the witness. In addition, a party's interest in neutralizing the unexpected testimony must outweigh the danger that the jury will consider the content of the impeaching statement as evidence of the facts it asserts, rather than evidence of the witness' credibility. Thus, before a witness' credibility can be impeached, his testimony must 'damage' the case of the party calling him. Courts have adopted a rule of thumb for interpreting the 'dam-

---

① Note, 49 Va L Rev 996, 1004 (1963).

age' requirement: the witness must give affirmative testimony regarding some material fact, i.e., testimony which asserts the existence or nonexistence of a material fact. If the witness merely denies knowledge of facts, such testimony is held not to 'damage' the case of the party calling him and the witness may not be impeached."[12]

In commenting more directly upon the facts of the *LeBeau* case, in which the witness also gave an "I don't know" answer, as in this case, one commentator pointed out that:

"Obviously, she did not testify as favorably as expected, and it is equally clear she didn't help the prosecution's case. Neither did she hurt it. She left it just where it was; that is to say, the fact that defendant didn't make the statement does not make his guilt appreciably less likely. Thus there was nothing to impeach. The only use to which the jury could put the impeaching testimony [of the police inspector] was as proof of the truth of what he said Nancy had told him—a concededly forbidden use."[13]

That commentator reached the following conclusion:
"* * * 'Damage' as contemplated by the rule, means the harmful effect of the witness' [Nancy's] testimony. To find the necessary 'damage' in the possible effect of the interrogation of the defendant is to grasp upon a circumstance which seems completely unrelated to the rationale of the requirement. * * *"

Another commentator had this to say:

"It is submitted that the California court did not err in holding that a party may impeach his own witness by the use of prior inconsistent statements where he has been surprised and damaged by the witness' testimony. * * * It is submitted,

[12] Note, 62 Yale L J 650, 653-54 (1953).
[13] Note, 40 Calif L Rev 609, 611 (1952).

however, that the court did err in failing to make the distinction between a witness *failing to testify as expected and one actually testifying adversely to the party calling him.* * * * [I]t is more desirable to limit the impeachment of one's own witness, for it permits counsel to place before the jury evidence, substantive in its effect upon them, extremely prejudicial to the opposing side, in a manner which otherwise would not be permitted."[39] (Emphasis added)

After an exhaustive discussion of the problem, together with the rule of *LeBeau,* another commentator concluded as follows:

"* * * The traditional 'damage' requirement, though far from perfect, is apparently the most desirable standard for this purpose. As a general rule, *where a witness surprises with adverse statements about material facts, harm will be greater than where he simply denies knowledge of the facts,* for in the former instance the jury may definitely base findings on the adverse assertions. The defects of the traditional test can in part be remedied by a recognition of the affirmative nature of a denial of knowledge in certain situations. Beyond this, contrary to the California 'damaging impression' test, impeachment of one's own witness should be scrupulously circumscribed."[40] (Emphasis added)

■ From this discussion by the commentators it is to be noted that one of the reasons for permitting a party to impeach his own witness by proof of a prior inconsistent statement is to relieve the damage that would otherwise be caused to a party who is *surprised* when the witness called by him gives *affirmative testimony* adverse to his case.

The plaintiffs in this case contend that "sur-

---

[39] Note, 14 U of Pitt L Rev 275, 277 (1953).
[40] Note, 62 Yale L J, *supra* n. 12 at 661.

prise" is not a requirement for the impeachment by a party of his own witness by proof of a prior inconsistent statement, citing *State v. Gardner*, 2 Or App 265, 467 P2d 125 (1970), cert den, 406 US 972 (1972). Defendant makes no contention that "surprise" is such a requirement. This court has not directly considered this question in a case involving impeachment by a prior inconsistent statement. We have held, however, that "surprise" is not required for impeachment by a party of his own witness by proof of bias or interest and have recognized that a party does not necessarily have a choice in the selection of witnesses who know the facts of an occurrence which has become the subject of litigation so as to be required to "vouch" for the credibility of such witnesses, at least to such an extent as to make it improper to reveal to the jury the bias or interest of a witness.[10]

■ When, however, a party is not surprised by the adverse testimony of a witness called by him there is all the more reason to require that such adverse testimony be of actual prejudice or damage to the party before permitting the party to impeach the witness by offering in evidence a prior inconsistent statement which may well be accepted by the jury as substantive evidence of the facts stated.

Conversely, when no "surprise" is claimed (and no "surprise" is claimed in this case) we are of the view that when the witness gave no positive or affirmative testimony that was prejudicial or "damaging" to the party calling the witness, but said only that he "did not know" when asked questions by that party, there is all the more reason to retain the rule previously established by this court in the long line of cases represented by *State v. Merlo, supra,* rather

---

[10] See *State v. Estlick*, 269 Or 75, 523 P2d 1029 (1974).

than adopt the "damaging impression" theory as proposed by *People v. LeBeau, supra.*

We shall next, however, consider a more far-reaching proposal.

B. *The proposal to eliminate all restrictions on impeachment by a party of his own witness and to receive prior inconsistent statements as substantive evidence.*

The proposed Uniform Rules of Evidence include the following, as Rule 607:

"The credibility of a witness may be attacked by any party, including the party calling him."

The same rule has been adopted as Rule 607 of the new Federal Rules of Evidence.[12] According to the "Notes of Advisory Committee on Proposed Rules" following that federal rule, if the impeachment is by prior inconsistent statement, such a statement would be admissible not only for purposes of impeachment, but also as substantive evidence as a result of the redefinition of hearsay evidence by Rule 801(d) (1).[13]

Rule 801(d)(1) of the latest edition of the proposed Uniform Rules of Evidence would provide as follows:

"(1) *Prior statement by witness.* The declarant testified at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony *and was given under oath and subject to the pen-*

[12] Fed Rules Evid Rule 607, 28 USCA (1975).

[13] That "note" also states that "[t]he substantial inroads into the old rule made over the years by decisions, rules, and statutes are evidence of doubts as to its basic soundness and workability," citing 3A Wigmore on Evidence § 905 (1970). Reference was also made to Ladd, Impeachment of One's Own Witness—New Developments, 4 U Chi L Rev 69 (1936); McCormick on Evidence § 38 (2d ed 1972).

*alty of perjury at a trial, hearing, or other proceeding, or in a deposition,* or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *."[19] (Emphasis added)

This statement of the proposed rule is in accord with Rule 801(d)(1) of the new Federal Rules of Evidence as adopted by Congress in 1975.[20]

It is significant to note, however, that as previously drafted and as submitted to Congress for approval Rule 801(d)(1) of the proposed Federal Rules of Evidence provided as follows:

"A statement is not hearsay if—(1) Prior Statement by Witness—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *."[21]

It thus becomes clear that it was during the consideration and enactment by Congress of the new Federal Rules of Evidence that the use of prior inconsistent statements as substantive evidence, if made by a witness present and available for cross-examination, was limited to such statements as were "given under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding."

After a careful discussion and analysis of both Rules 607 and 801(d)(1) of the previously proposed

[19] Uniform Rules of Evidence (ULA) Rule 801(d)(1) (1975).

[20] Fed Rules Evid, Rule 801(d)(1), 28 USCA (1975).

[21] Rules of Evidence for United States Courts and Magistrates, Rule 801(d)(1) (West 1972); cf. Uniform Rules of Evidence, Rule 63(1), 9A ULA (1965).

Uniform Rules of Evidence and the original proposed Federal Rules of Evidence, as compared with those rules as finally adopted by Congress as the Federal Rules of Evidence (and as also set forth in the latest edition of the proposed Uniform Rules of Evidence), one of the more careful students of this subject writes as follows:

"To date none of the existing combinations of rules 801 and 607 is wholly satisfactory. The Advisory Committee's Rule 801(d)(1) was too indiscriminate in admitting every conceivable kind of prior inconsistent statement and overly optimistic about the potency of cross-examination at trial. When combined with Rule 607, this version of Rule 801(d)(1) offered a hearsay shortcut whose magnitude its drafters probably did not anticipate. The more restricted versions of Rule 801(d)(1) present a different problem. The House revisers failed to recognize that Rule 801 should not be amended without a corresponding change in Rule 607: unless impeachment of one's own witness is restricted, parties will intentionally acquaint the jury with statements that the House meant to exclude as hearsay. *For this reason the rules must be adjusted so that the party who would impeach his own witness with a prior inconsistent statement must first show surprise and damage, unless the statement is classified as non-hearsay under Rule 801.*"[22] (Emphasis added)

In addition, as pointed out by the majority of this court in *State v. Derryberry, supra* at 482, 491, in discussing the effect of the adoption of what was then Rule 63(1) of the then proposed Uniform Rules of Evidence:

"* * * [T]he adoption of Rule 63(1) would undermine the foundations underlying much of the

---

[22] Peeples, Prior Inconsistent Statements and the Rule Against Impeachment of One's Own Witness: the Proposed Federal Rules, 52 Texas L Rev 1383, 1409 (1974).

present law of hearsay evidence and would result in the overruling, sub silentio, of many of the previous decisions by this court. Indeed, it is the avowed purpose of the proposed Uniform Rules of Evidence to 'wipe the slate clean of all disqualifications of witnesses, privileges and limitations upon the admissibility of relevant evidence' in order that 'harmony and uniformity [may be] advanced by writing back onto the slate the limitations and exceptions desired.' 9A Uniform Laws Annotated, Rules of Evidence 598, Rule 7, Commissioner's Note (1953). See also articles entitled 'How the Adoption of the Uniform Rules of Evidence Would Affect the Law of Evidence in Oregon,' 41 Or L Rev 275 and 376, and 42 Or L Rev 200 and 251 (1963)."

At the time of our decision in *Derryberry* (at 491), the majority of this court was not prepared to adopt what was then Rule 63(1). Approximately one year later, with the law on this subject in an even more confused state as the result of the subsequent modification of Rule 63(1)—now Rule 801(d)(1)— and in view of the close relationship between that rule and Rule 607, we are even more reluctant to adopt either Rule 801(d)(1) in its present form or in the form previously proposed as Rule 63(1).

This is particularly true in this case, in which the alleged prior inconsistent statement by this witness was not one "given under oath and subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition," so as to qualify for admission as substantive evidence under Rule 801(d)(1) of the presently proposed Uniform Rules of Evidence and Rule 801(d)(1) of the recently adopted Federal Rules of Evidence.

For all of these reasons, we hold that the trial court erred in permitting plaintiffs to offer the alleged prior inconsistent statement of Lorren Harwood,

through the testimony of Melvin Zoller, either for purposes of impeachment or as substantive evidence.

### 4. *Allowance of punitive damages in trespass action despite allowance of only nominal general damages.*

Because this case must be remanded for a new trial we shall also consider defendant's contention that the trial court erred in failing to set aside the jury verdict for $1,500 in punitive damages in the trespass cause of action in each case, in which the jury returned verdicts for only $1 in general damages.

Defendant says that the law in Oregon is well settled that punitive damages are not recoverable in the absence of an award of actual and substantial compensatory damages.[23] Defendant also says that it has been uniformly held in Oregon that before an award of general damages will support a judgment of punitive damages, general or compensatory damages must be found, and in more than a nominal amount,[24] and that punitive damages alone can never constitute the basis for a cause of action.[25]

In response, plaintiffs contend: (1) that defendant failed to make a timely objection to the sufficiency of the verdict before the jury was discharged, and (2) that in an action for trespass, as in an action for wrongful attachment, the law assumes that some actual damages followed the trespass, with the result that punitive damages do not constitute the basis for

[23] Cases cited by defendant in support of this contention are: *Belleville v. Davis*, 262 Or 387, 405, 498 P2d 744 (1972); *Carnation Lbr. Co. v. McKenney et al*, 224 Or 541, 546-47, 356 P2d 932 (1960); *Crouter v. United Adjusters, Inc.*, 259 Or 348, 364-65, 485 P2d 1208 (1971); *Coates v. Slusher*, 109 Or 612, 631, 222 P 311 (1924); *Martin v. Cambas*, 134 Or 257, 261, 293 P 601 (1930); *Lenske v. Knutsen*, 410 F2d 583, 586 (9th Cir 1969).

[24] Cases cited by defendant include *Coates v. Slusher*, 109 Or 612, 631, 222 P 311 (1924), and *Lenske v. Knutsen*, 410 F2d 583, 586 (9th Cir 1969).

[25] Citing *Martin v. Cambas*, 134 Or 257, 261, 293 P 601 (1930).

the cause of action and are recoverable in an action for trespass without pleading or proof of actual damages.

■ As to plaintiffs' first contention, we find that defendant's objection was timely because she first objected when the jury first returned its verdict on the trespass count for no general damages and $1,500 punitive damages in each case, upon the ground that such a verdict was improper and upon the, ground that the jury had made an affirmative finding that there was no damage in the trespass cause of action. At that time defendant also objected to resubmitting the case to the jury for any further instruction, which was then done over her objection. When the jury then returned with a verdict for $1 general damages and $1,500 punitive damages the trial court clearly understood that defendant's objection was a continuing one because it immediately discharged the jury and then commented, when defendant repeated substantially the same objection, that "I think the record is sufficiently clear on that point * * *."

■ As to plaintiffs' second contention, to which defendant has not responded by its reply brief, we find it to be correct that in an action for trespass to land, as in an action for wrongful attachment (as involved in *Crouter v. United Adjusters, Inc.*, 259 Or 348, 485 P2d 1208 (1971)), the law presumes that a plaintiff has been damaged without the necessity of proof of actual damage. The general rule on this subject is stated in Prosser, Law of Torts 66, § 13 (4th ed 1971), as follows:

> "The common law action of trespass could be maintained without proof of any actual damage. From every direct entry upon the soil of another, 'the law infers some damage; if nothing more, the treading down grass or herbage.' The plaintiff recovered nominal damages where no sub-

stantial damage was shown, or even where the trespass was a benefit to him. The action was directed at the vindication of the legal right, without which the defendant's conduct, if repeated, might in time ripen into prescription; and there was no room for the application of the maxim that the law does not concern itself with trifles."

It follows that just as in *Crouter v. United Adjusters, Inc., supra* at 365, we held that in an action for wrongful attachment a plaintiff is entitled to have his case submitted to the jury for an award of punitive damages without pleading or proof of special damages (assuming that the other necessary elements for an award of punitive damages are pleaded and proved), the same is true in cases involving actions for trespass to real property.

For reasons previously stated, however, the judgments in these cases must be set aside and they must be remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

O'CONNELL, C. J., dissenting.

I dissent for the reasons stated in my dissenting opinion in *State v. Derryberry,* 270 Or 482 at 492, 528 P2d 1034 at 1038 (1974). Supplementing what I said there, I endorse the view expressed by Professor Morgan that the rule precluding the impeachment of one's own witness "has no place in any rational system of investigation in modern society. And all attempts to modify or justify it so as to reach sensible results serve only to demonstrate its irrationality and to increase the uncertainties of litigation."[1] As one court has noted, the rule has been "more honored in

---

[1] 1 Morgan, Basic Problems of Evidence, 64 (1954).

928

its breach than in its observance."[2]   The court went on to say:

> "Viewing a trial as a sporting event in which only the parties have any interest, the [common-law] rule might be adhered to, like one of the rules of any game. The purpose of a trial, however, is to seek for and, if possible, find the truth and to do justice between the parties according to the actual facts and the law, and any rule which stands in the way of ascertaining the truth and thus hampers the administration of justice must give way. The parties to a lawsuit, if they are honest, do not manufacture witnesses or evidence. The witnesses are determined by circumstances over which the parties usually have no control." 83 F2d at 332.

In one of the law review articles cited in the majority opinion the author concluded:

> "* * * [C]ourts adhering to the rule present as justification for their observance no logical rationale or practical argument that vitiates the obvious inequity it creates. In modern trials, the emphasis should be not on trial tactics, but on the presentation of evidence that will guide the trier of fact in its determination of the truth. In this process there should be no artificial barriers erected which might preclude fair disclosure of all relevant material. The witness' function is to place the evidence before the trier of fact. Although, through the mediums of cross-examination and impeachment, the opposing party may bring out justifications for disallowing such evidence or call into question its reliability, under the common-law rule the calling party has no such opportunity. This opens the door to possible one-sided presentation. Such a situation is the antithesis of a search for truth, for both parties should be on the same footing.

---

[2] London Guarantee & Acc. Co. v. Woelfle, 83 F2d 325, 332 (8th Cir 1963).

"The apparent solution would be simply to rule that 'no party shall be precluded from impeaching a witness because the witness is his own.' [Citation omitted] Such complete abrogation of the rule is advocated by the Uniform Rules of Evidence, which makes all witnesses witnesses of the court. Its adoption would be a step forward in the law, which grows only through the discarding of methods and concepts that prove inapplicable or unsuitable in a never-ending process of refinement. Recently, a federal court, faced with the anachronistic situation described, boldly stated:

" 'We do not limit our repudiation of the pernicious rule against impeachment of one's witness to instances in which the witness is an "adverse party" or "hostile." The search for truth is not to be confined by any such limitation * * *.' [*U.S. v. Freeman,* 302 F2d 347, 351 (2d Cir 1962)].

Such a disavowal not only of the common-law rule, but also of the piecemeal attacks on it deserves the support of every lawyer." Impeaching One's Own Witness, 49 Va L Rev 996, 1019-20 (1963).

The two major treatises on evidence also conclude that the rule adopted by the majority opinion in the present case is unsound.[9]

The majority holds that the prior inconsistent statement by plaintiff's witness "was also not admissible as substantive evidence because defendant's son did not have first hand knowledge of the facts stated."

Zoller testified that Lorren Harwood, defendant's son, told him that his mother "took a shot at somebody and that they had probably gotten rid of the gun through Mickey." From this testimony, it does not appear whether Lorren Harwood had first

---

[9] McCormick on Evidence (2d ed 1972) § 38; 3A Wigmore on Evidence, § 899.

hand knowledge of the shooting or learned it from somebody else. If he learned of the fact from his mother, the evidence would be admissible as an admission. But even if Lorren Harwood learned of the shooting from someone other than his mother, and it thus was hearsay, there was sufficient guarantee of trustworthiness to circumvent the dangers of hearsay in the fact that a son would not be likely to make such a statement about his mother if it were not true. We should apply the same reasoning here as we applied in *Timber Access, Inc. v. U. S. Plywood,* 263 Or 509, 503 P2d 482 (1972).

DENECKE, J., joins in this opinion.

BRYSON, J., concurring.

I concur with the majority opinion because I feel that the facts in *State v. Derryberry,* 270 Or 482, 528 P2d 1034 (1974), are distinguishable from those in the case at bar. As pointed out in the majority opinion,

> "* * * even if Lorren Harwood had attempted to testify that 'his mother had gotten crazy and took a shot at somebody and that they had probably gotten rid of the gun through Mickey,' that testimony would have been inadmissible either as hearsay or for lack of firsthand knowledge — at least insofar as it related to the shooting incident —because Lorren Harwood was not present at that incident and could only have been told about it by some other unknown person."

In *Derryberry* the witness, Joel Clark, whose testimony the state wished to impeach, was present in the defendant's trailer home. He personally knew of the furniture in defendant's trailer home, which furniture the state claimed was stolen by defendant. He testified as to what the *defendant* had told him: that "defendant had told him he had obtained the goods by purchase or trade." Also, the impeaching testimony

from the officers that "he told them that defendant had told him on January 26 that he had 'ripped off' the furniture the previous day" is an admission of the defendant and speaks to personal knowledge.

Therefore, in *Derryberry* Clark's testimony would have been admissible if made while testifying as a witness pursuant to Rule 63(1) of the Proposed Uniform Rules of Evidence. In the case at bar, as stated by the majority, Lorren Harwood's testimony would not be admissible as he had no firsthand knowledge of the shooting incident and he did not testify that his mother, the defendant, had told him of the incident or of giving the gun to his brother, Mickey.

Rule 63(1) of the Proposed Uniform Rules of Evidence states:

"Hearsay Evidence Excluded—Exceptions. Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

"(1) Previous Statements of Persons Present and Subject to Cross Examination. A statement previously made by a person who is present at the hearing and available for cross examination with respect to the statement and its subject matter, *provided the statement would be admissible if made by declarant while testifying as a witness;* * * *." (Emphasis supplied.)

Lorren Harwood's statement, as testified to by witness Zoller, would not be admissible if he were so testifying because he had no knowledge of the incident and his mother, the defendant, had not made a statement to him.

Therefore, the testimony was erroneously received in the case at bar as it does not qualify under Uniform Rules of Evidence, Rule 63(1). For this reason I would reverse and remand.